# United States Court of Appeals

## For the First Circuit

No. 02-1604

ROSIE D., BY HER PARENTS, JOHN AND DEBRA D., ET AL.,
Plaintiffs, Appellees,

v.

JANE M. SWIFT, ACTING GOVERNOR, ET AL.,
Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Selya, Circuit Judge,
Coffin and B. Fletcher,* Senior Circuit Judges.

Deirdre Roney, Assistant Attorney General, with whom Thomas F. Reilly, Attorney General, was on brief, for appellants.
Steven J. Schwartz, with whom Cathy E. Costanzo, Center for Public Representation, James C. Burling, Sara J. Shanahan, John S. Rhee, Hale and Dorr, LLP, Frank Laski, and Mental Health Legal Advisors were on brief, for appellees.
Steven A. Hitov and Victoria Pulos on brief for National Health Law Program, National Alliance for the Mentally Ill, National Mental Health Ass'n, National Ass'n of Protection and Advocacy Systems, Mass. Law Reform Institute, Western Mass. Legal Services, and the Judge David L. Bazelon Center for Mental Health Law, amici curiae.

November 7, 2002

_____
*Hon. Betty B. Fletcher, of the Ninth Circuit, sitting by designation.

**SELYA**, <u>Circuit Judge</u>.  In recent years, the Supreme Court has redefined the calculus of federalism, tilting the scales more and more toward states' rights.  This appeal represents an attempt by the named defendants — a complement of Massachusetts officials, including the governor, two cabinet officers, and the Commissioner of the Division of Medical Assistance — to capitalize upon that trend.  As we explain below, they seek to push the envelope too far.

We begin with basics.  In this class action, the plaintiffs seek prospective injunctive relief to vindicate their view that the federal Medicaid Act requires Massachusetts to provide home-based mental health services to Medicaid-eligible children.  The defendants resist the plaintiffs' interpretation of the Medicaid Act.  As a preliminary matter, however, they claim that the Eleventh Amendment bars the prosecution of the plaintiffs' action in a federal court (and, thus, obviates any need to address the substantive question).

The district court rejected the defendants' Eleventh Amendment sortie, and the defendants thereupon filed this interlocutory appeal.  We affirm the district court's ruling. While recent Supreme Court decisions have made some inroads on the venerable doctrine of <u>Ex parte Young</u>, 209 U.S. 123 (1908), they have not eviscerated that doctrine, and only very narrow exceptions infringe on the well established right to ask for prospective

-2-

injunctive relief against state officials in a federal forum. Consequently, the Eleventh Amendment does not preclude the maintenance of this action.

## I. BACKGROUND

Congress created the Medicaid program, 42 U.S.C. §§ 1396-1396v, in 1965. Over time, it augmented the program's coverage to provide early and periodic screening, diagnosis and treatment (EPSDT) services to Medicaid-eligible children. See id. §§ 1396a(a)(10), 1396a(a)(43), 1396d(a)(4)(B), 1396d(r)(5). Congress intended that these revisions would give children access to preventive health care (e.g., vision, hearing, and dental services), preempt the onset of childhood illness, and identify children with disabilities in need of early attention. See, e.g., H.R. Rep. No. 101-247, at §§ 4211-4214 (1989), reprinted in 1989 U.S.C.C.A.N. 1906, 2121-2127; S. Rep. No. 90-744, at § II-G (1967), reprinted in 1967 U.S.C.C.A.N. 2834, 2869-2871. The EPSDT reforms enacted by Congress in 1989 (as part of the Omnibus Budget Reconciliation Act of 1989, Pub. L. No. 101-239, 103 Stat. 2106) were particularly noteworthy in two pertinent respects. First, Congress obligated participating states to provide a comprehensive package of preventive services that met reasonable standards of medical necessity. 42 U.S.C. §§ 1396a(a)(43), 1396d(r). Second, Congress expanded EPSDT services to include "[s]uch other necessary health care, diagnostic services, treatment, and other measures

-3-

described [as medical assistance] to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan." Id. § 1396d(r)(5). In effect, these amendments required states to provide Medicaid coverage for any service "identified as medically necessary through the EPSDT program." 135 Cong. Rec. S6899, 6900 (daily ed. June 19, 1989) (statement of Sen. Chafee).

The case before us arises out of a dispute over the Commonwealth's obligations under sections 1396a(a)(43) and 1396d(r)(5). The plaintiffs are nine Medicaid-eligible children, acting through their parents or guardians, who seek to compel the Commonwealth to furnish them with home-based mental health services. Although their particular ailments vary, each plaintiff has been diagnosed with a severe psychiatric or behavioral disorder. These debilitating conditions have led to a wide array of unhappy results, including expulsions from schools, cyclical transfers between treating facilities, repeated hospitalizations, and years spent away from family members at crisis stabilization units.

In the plaintiffs' view, the Massachusetts Medicaid program, as presently administered, relies almost exclusively on institution-based psychiatric care. The plaintiffs allege that such a narrowly focused treatment regime cannot rehabilitate (and,

indeed, may exacerbate) their conditions; that home-based psychiatric care is medically necessary for effective treatment; that the Commonwealth, notwithstanding its clear statutory obligation to provide such services, has taken no action; and that its lethargy flies in the face of the EPSDT mandates.

To right these perceived wrongs, the plaintiffs invoked 42 U.S.C. § 1983 and brought suit in federal district court.[1] They claim to represent thousands of Medicaid-eligible children, resident in Massachusetts, who suffer from similarly severe behavioral, emotional, and psychiatric disorders and who require home-based care. The gravamen of their complaint is that the Medicaid statute entitles the members of the putative class to, and obligates the Commonwealth to provide, intensive home-based mental health services. They further allege that the defendants' persistent denial of such medically necessary treatment has created a "mental health crisis" within Massachusetts. On this basis, they

---

[1]Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

ask the district court to order the defendants to reform the Massachusetts Medicaid program to include the home-based mental health care that the EPSDT provisions allegedly require.

The defendants moved to dismiss the action on three grounds. First, they claim that the Commonwealth's sovereign immunity, enshrined in the Eleventh Amendment of the United States Constitution, bars the suit.[2] Second, they assert that the EPSDT provisions of the Medicaid Act do not create private rights enforceable under section 1983. Third, they posit that the plaintiffs' complaint fails to state an actionable claim. The plaintiffs opposed this motion and the district court, ruling ore sponte, denied it.

The defendants responded by filing this interlocutory appeal. The appeal is proper as to the Eleventh Amendment issue, as pretrial orders granting or denying Eleventh Amendment immunity are immediately appealable. See P.R. Aqueduct & Sewer Auth. v.

---

[2]The amendment reads:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. Despite its phrasing, the amendment consistently has been read to render a state immune from suits brought in federal courts both by its own citizens and by citizens of other states. E.g., Employees of Dep't of Pub. Health & Welfare v. Dep't of Pub. Health & Welfare, 411 U.S. 279, 280 (1973); Fred v. Roque, 916 F.2d 37, 38 (1st Cir. 1990) (per curiam).

Metcalf & Eddy, Inc., 506 U.S. 139, 141 (1993).  We affirm the district court's ruling as it pertains to the issue of Eleventh Amendment immunity.  The other facets of the order denying the motion to dismiss are not ripe for review, and we express no opinion as to those issues.

## II.  ANALYSIS

As a general matter, the Eleventh Amendment bars suits in federal courts against unconsenting states (including "official capacity" suits against state hierarchs).  De Leon Lopez v. Corporacion Insular de Seguros, 931 F.2d 116, 121 (1st Cir. 1991) (collecting cases).  This proscription is subject to a well recognized exception memorialized in Ex parte Young, 209 U.S. at 159-60.  The exception allows federal courts, "notwithstanding the absence of consent, waiver or evidence of congressional assertion of national hegemony, [to] enjoin state officials to conform future conduct to the requirements of federal law."  Lane v. First Nat'l Bank, 871 F.2d 166, 172 n.5 (1st Cir. 1989) (quoting Ramirez v. P.R. Fire Serv., 715 F.2d 694, 697 (1st Cir. 1983)).

For nearly a century, the doctrine of Ex parte Young flourished and suits against state officials seeking prospective injunctive relief were commonplace.  E.g., Quern v. Jordan, 440 U.S. 332, 346-47 (1979); Ramirez, 715 F.2d at 697; Coalition for Basic Human Needs v. King, 654 F.2d 838, 842 (1st Cir. 1981) (per curiam).  Lately, however, the Supreme Court has fashioned an

-7-

exception to the exception, applicable to certain cases in which "Congress has created a remedial scheme for the enforcement of a particular federal right." Seminole Tribe v. Florida, 517 U.S. 44, 74 (1996). Since the plaintiffs here sue only for prospective injunctive relief, and do so under the imprimatur of Ex parte Young, this case requires us to evaluate, for the first time, the extent to which Seminole Tribe has narrowed the Ex parte Young exception.

The litigants sketch the suggested contours of this new limitation in very different ways. The plaintiffs (and the amici) view Seminole Tribe as a rara avis, asserting that it relates only to those few federal statutes that contain comprehensive remedial schemes, and otherwise leaves the doctrine of Ex parte Young alive and well. The defendants contend that the Seminole Tribe constraint applies much more broadly. They tell us that, under Seminole Tribe, the inquiry into the applicability of Ex parte Young in any given case turns upon a comparison between the remedies conferred by the statute governing the dispute and the judicial remedies available under Ex parte Young; whenever the statute provides anodynes that are more limited than those allowed under Ex parte Young, a complainant's redress is restricted to the former (and, accordingly, Ex parte Young becomes a dead letter).

For purposes of analysis, we turn directly to the defendants' argument. The defendants base their assessment of the

diminished efficacy of the Ex parte Young exception on their reading of two recent Supreme Court cases. They asseverate that, in Seminole Tribe, the Court examined the remedial provisions created by the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. §§ 2701-2721, and asked whether those remedies were more circumscribed than the relief available under Ex parte Young. Seminole Tribe, 517 U.S. at 74-75. The defendants also contend that in a subsequent case, Verizon Md., Inc. v. Pub. Serv. Comm'n, 122 S. Ct. 1753, 1761 (2002), the Court undertook a similar inquiry with respect to the Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (codified, as amended, in scattered sections, chiefly in 47 U.S.C. §§ 151-615). Building on this foundation, the defendants argue that Ex parte Young remains ascendant only when the applicable statute authorizes a set of remedies more far-reaching than prospective injunctive relief.

Clinging to this approach, the defendants visualize the case at hand through the prism of the "fair hearing" requirement of the Medicaid statute, 42 U.S.C. § 1396a(a)(3). That provision, nestled among a long list of requirements imposed on state plans,[3] declares tersely that "[a] State plan for medical assistance must . . . provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical

_____

[3]One commentator suggests that "Section 1396a is generally regarded to be the longest sentence in the English language." Barry R. Furrow et al., Health Law § 12-1, at 2 n.2 (2d ed. 2000).

-9-

assistance under the plan is denied or is not acted upon with reasonable promptness." According to the defendants, this language supplies a remedy (a fair hearing) more limited than that available under Ex parte Young (prospective injunctive relief), and, thus, precludes the use of Ex parte Young as an instrument for piercing the shield of the Commonwealth's Eleventh Amendment immunity.[4]

To be sure, recent Supreme Court decisions have redefined Eleventh Amendment jurisprudence in a variety of ways. E.g., Alden v. Maine, 527 U.S. 706, 712-15 (1999); Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank, 527 U.S. 627, 635-36 (1999); Idaho v. Coeur d'Alene Tribe, 521 U.S. 261, 267-70, 281-82 (1997). We have termed this movement a "sea change" in constitutional doctrine. Jusino Mercado v. Commonwealth of Puerto Rico, 214 F.3d 34, 38 (1st Cir. 2000). But even sea changes have limited (albeit significant) effects — and the Supreme Court has not yet signaled a willingness to curtail the Ex parte Young exception as drastically as the defendants suggest.

---

[4]We assume, without deciding, that the defendants are correct in their assertion that section 1396a(a)(3) offers remedies that are narrower than the prospective injunctive relief available under Ex parte Young. It is unsettling, however, that the defendants base this assertion in large measure on the regulations that implement the statute — 42 C.F.R. §§ 431.200-250 — rather than on the statutory text. In both Seminole Tribe and Verizon, the Court looked only at the statutory language, not at any accompanying regulations. That may well be significant, as regulatory language is not invariably a reliable guide to congressional intent.

-10-

The fatal flaw in the defendants' argument lies in their misreading of <u>Seminole Tribe</u>.  The Supreme Court did not, as the defendants would have it, place primacy on the presence of statutory limitations on remedies.  Rather, the Court read the remedial limitations imposed by the IGRA merely as a clue from which to deduce congressional intent.  <u>See</u> <u>Seminole Tribe</u>, 517 U.S. at 75-76 (explaining that Congress's decision "to impose upon the State a liability that is significantly more limited than would be the liability imposed upon the state officer under <u>Ex parte Young</u> strongly indicates that Congress had no wish to create the latter").  Thus, the nature and scope of the IGRA's remedial scheme was instrumental in the Court's ruling only to the extent that those attributes spoke to congressional intent.  And in terms of that intent, the key factors in <u>Seminole Tribe</u> were the intricacy and detail of the statute's remedial scheme.  <u>Id.</u> at 74.  In other words, it was the <u>comprehensiveness</u> of the remedial scheme that suggested an intention to pretermit <u>Ex parte Young</u> relief.  <u>See</u> <u>id.</u>

Perscrutation of the Court's decision in <u>Verizon</u> reinforces this point.  The <u>Verizon</u> Court emphasized the centrality of congressional intent, basing its decision on whether "the 1996 [Telecommunications] Act display[ed] any intent to foreclose jurisdiction under <u>Ex parte Young</u>."  122 S. Ct. at 1761.  The Court's passing mention of limited remedies served only to highlight Congress's apparent motive.

-11-

Properly read, Seminole Tribe and Verizon provide clear guideposts as to how lower courts should approach the inquiry into congressional intent.  In each instance, the Court placed great emphasis on the detail and intricacy of the underlying statute's remedial scheme as indicators of congressional intent.  Following this train of thought, the Seminole Tribe Court concluded that "the intricate procedures set forth in [the IGRA] show that Congress intended therein not only to define, but also to limit significantly, the [available remedies]."  517 U.S. at 74.  The Court similarly keyed the more general proposition on statutory detail:  "where Congress has prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right, a court should hesitate before casting aside those limitations and permitting an action against a state officer based upon Ex parte Young."  Id.  So too Verizon, 122 S. Ct. at 1761, in which the Court compared the level of detail and intricacy of the IGRA with the 1996 Telecommunications Act and found the latter insufficient to betoken an intent to foreclose Ex parte Young relief.

The short of it is that, as the defendants suggest, Seminole Tribe and Verizon provide a roadmap for testing the continued vitality of the Ex parte Young exception on any given set of facts.  But contrary to the defendants' importunings,[5] that

_____

[5]We note at this juncture that the defendants' reading of Seminole Tribe is in direct conflict with the Court's statement there that "we do not hold that Congress cannot authorize federal

-12-

roadmap directs us to pay particular attention to comprehensiveness, that is, statutory detail and intricacy, as one indication of congressional intent as it pertains to the Ex parte Young exception. Applying this mode of analysis to the case at bar yields a straightforward result.

The Medicaid Act contains no comprehensive set of remedies. The single artifact relied upon by the defendants — the fair hearing provision — does not approach the standard of comprehensiveness required under Seminole Tribe and Verizon as a basis for trumping Ex parte Young. Rather, section 1396a(a)(3) merely guarantees a fair hearing to Medicaid beneficiaries. It neither offers any detail as to how states must conduct such hearings nor erects any ancillary remedial structures. This lies in sharp contrast to the IGRA, 25 U.S.C. § 2710(d)(3), a statute setting forth a web of procedures "prescrib[ing] that a court could issue an order directing the State to negotiate, that it could require the State to submit to mediation, and that it could order that the Secretary of the Interior be notified." Verizon, 122 S. Ct. at 1761 (discussing the IGRA). Indeed, the pertinent provisions of the Telecommunications Act, 47 U.S.C. § 252(e)(6), which the Verizon Court found lacking in comprehensiveness (and, thus, inadequate to supplant an Ex parte Young action), 122 S. Ct.

_____

jurisdiction under Ex parte Young over a cause of action with a limited remedial scheme." 517 U.S. at 75 n.17 (emphasis in original).

-13-

at 1761, afforded far more intricacy and detail than the Medicaid provision at issue here. Whereas section 252(e)(6) is tailored to apply specific sections of the Telecommunications Act to certain disputes, the Medicaid fair hearing reference is a standardless generality, open to interpretation by the states.

We add, moreover, that even aside from its lack of comprehensiveness, section 1396a(a)(3) offers no intimation of a congressional intent to foreclose other remedies. The provision merely requires states to provide Medicaid beneficiaries with a fair hearing to contest an agency decision (something that the Due Process Clause might require in any case).

For these reasons, we hold that the Eleventh Amendment does not prevent Medicaid beneficiaries from seeking prospective injunctive relief against state officials in a federal court. In so holding, we preserve three decades of case law refusing to construe the Eleventh Amendment to prohibit suits for prospective injunctive relief involving Title XIX of the Social Security Act. E.g., Wilder v. Va. Hosp. Ass'n, 496 U.S. 498, 521-22 (1990) (permitting suit against state Medicare intermediaries in connection with hospital reimbursement); Maine v. Thiboutout, 448 U.S. 1, 5-6 (1980) (permitting suit against officials distributing AFDC payments); Rosado v. Wyman, 397 U.S. 397, 405-06 (1970) (permitting suit by welfare recipients against state welfare administrators); Visiting Nurse Ass'n of N. Shore, Inc. v. Bullen,

93 F.3d 997, 1002-05 (1st Cir. 1996) (permitting suit by health care providers against Medicaid program officials over reimbursement rates); Mass. Ass'n of Older Ams. v. Sharp, 700 F.2d 749, 750-52 (1st Cir. 1983) (permitting suit by families to prevent termination of Medicaid benefits vis-à-vis stepchildren). That jurisprudence includes several cases holding that the Eleventh Amendment does not bar suits seeking prospective injunctive relief against state actors relative to EPSDT benefits. E.g., Mitchell v. Johnston, 701 F.2d 337, 344 (5th Cir. 1983); Stanton v. Bond, 504 F.2d 1246, 1251 (7th Cir. 1974). This line of cases seems solidly embedded in constitutional terrain left undisturbed by Seminole Tribe. Reversing these precedents would require a dramatic — and unwarranted — departure from both the common understanding of Ex parte Young and its historic role in administering the Social Security Act.[6]

We note, too, that our holding today aligns us with a broad coalition of other courts which, subsequent to Seminole Tribe, have rejected similar arguments aimed at barring suits for prospective injunctive relief commenced by Medicaid beneficiaries against state actors. See, e.g., Frazar v. Gilbert, 300 F.3d 530,

---

[6]Although the defendants seek support for such a departure in a recent decision of this court, see Greenless v. Almond, 277 F.3d 601 (1st Cir. 2002), that case offers them no succor. There, we dismissed a private claim under the Medicaid statute on the basis of statutory interpretation. Id. at 608-09. We explicitly refrained from ruling on the question of sovereign immunity. Id. at 606-07.

550-51 & n.109 (5th Cir. 2002) (concluding that the Medicaid Act does not possess an intricate remedial scheme regulating noncompliance by states and permitting Ex parte Young action on behalf of Medicaid beneficiaries to secure EPSDT benefits); Mo. Child Care Ass'n v. Cross, 294 F.3d 1034, 1038 (8th Cir. 2002) (concluding "that the [Child Welfare Act of 1980, Title IV-E of the Social Security Act] does not reflect any intent to limit Ex parte Young actions"); Antrican v. Odom, 290 F.3d 178, 190 (4th Cir. 2002) (holding that "the Medicaid Act does not provide the type of detailed remedial scheme that would supplant an Ex parte Young action"); Westside Mothers v. Haveman, 289 F.3d 852, 862 (6th Cir. 2002) (holding that the Medicaid Act provision allowing reduction of funds to noncompliant states "is not a detailed 'remedial' scheme sufficient to show Congress's intent to preempt an action under Ex parte Young"); Joseph A. ex rel. Corrine Wolfe v. Ingram, 275 F.3d 1253, 1264 (10th Cir. 2002) (explaining that neither the Adoption and Safe Families Act nor the Adoption Assistance and Child Welfare Act "provide remedial schemes sufficient to foreclose Ex parte Young jurisdiction").

## III. CONCLUSION

We need go no further. To recapitulate, we conclude that in determining whether a statute's remedial provisions preclude prospective injunctive relief under the doctrine of Ex parte Young, the proper test involves an inquiry into Congress's intent. Here,

that inquiry centers on determining whether the remedial scheme is sufficiently comprehensive to indicate that Congress intended to foreclose such relief. The fair hearing requirement set forth in 42 U.S.C. § 1396a(a)(3) falls well short of this benchmark. Consequently, Ex parte Young controls. We conclude, therefore, that the buckler of Eleventh Amendment immunity does not protect state officials from federal court suits for prospective injunctive relief under the Medicaid Act. The plaintiffs thus may proceed with the prosecution of the instant action.

**Affirmed**.