**MOUNTAIN CABLE COMPANY, d/b/a Adelphia Communications**

**and**

**Better TV, Inc. of Bennington, d/b/a Adelphia Cable Communications,**

**v.**

**PUBLIC SERVICE BOARD OF THE STATE OF VERMONT**

**and**

**Vermont Department of Public Service.**

No. 1:00–CV–298.

United States District Court, D. Vermont.

Jan. 9, 2003.

Richard H. Saudek, Cheney, Brock, Saudek & Mullett, PC, Montpelier, VT, for Plaintiffs.

Leslie Alane Cadwell, Christopher G. Jernigan, Vermont Attorney General's Office, Montpelier, VT, Ronald A. Shems, Shems Dunkiel & Kassel, PLLC, Burlington, VT, for Defendant.

Leslie Alane Cadwell, Christopher G. Jernigan, Vermont Attorney General's Office, Montpelier, VT, Dixie Lee Henry, Vermont Dept. of Public Service, Montpelier, VT, for Intervenor–Defendant.

*RULING ON PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT*

(Paper 17)

MURTHA, District Judge.

## BACKGROUND

Plaintiffs Mountain Cable Company, d/b/a Adelphia Cable Communications, and Better TV, Inc. of Bennington, d/b/a Adelphia Cable Communications (collectively "Adelphia"), have moved to amend their complaint against the Public Service Board of the State of Vermont (the "Board") to include the individual members of the Board as defendants in their official capacity. Both the Board and intervenor, Vermont Department of Public Service (the "Department"), object.

According to the complaint, Adelphia is a cable operator doing business in Vermont. It operates in certain localities pursuant to a Certificate of Public Good ("CPG") granted by the Board. In 1998, the Board initiated a renewal proceeding for various of Adelphia's CPGs. In April 1999, the Department sought to sanction Plaintiff Mountain Cable Co. for alleged violations of a Stipulation and Agreement arising out of a prior proceeding. In July 1999, the Board consolidated the two actions and, in April 2000 issued its Opinion and Order. According to Adelphia, "several findings in the Board's Order and conditions in the renewed CPG have the effect of denying critical aspects of Plaintiff's [CPG] renewal proposal." (Complaint ¶ 20).

In particular, Adelphia objects to the Board's determination regarding Public, Educational and Governmental Access to its cable network; high speed Internet service; itemization on customers' bills for gross revenue tax; average cost per mile of line extensions; and payment of certain of the Department's costs. Adelphia filed suit in this Court to enjoin the enforcement of those portions of the Board's order, naming the Board as the sole defendant. Following the Department's intervention, and the Board's subsequent motion to dismiss, Adelphia now seeks to amend its complaint to include as defendants the individual board members in their official capacities. This is not the Court's first opportunity to rule on the present motion and a brief recital of its procedural history is in order.

In September 2000, the Board moved to dismiss Adelphia's complaint, claiming sovereign immunity under the Eleventh Amendment. Adelphia opposed the motion to dismiss but simultaneously moved to amend its complaint to include the individual Board members as defendants. In Adelphia's view, this would have allowed Adelphia to invoke *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and thereby circumvent the Board's Eleventh Amendment defense.

On April 2, 2001, this Court denied the Board's motion to dismiss, holding that judicial review in the District Court was

specifically authorized by the Cable Communications Policy Act of 1984, 47 U.S.C. §§ 521–573 ("the Cable Act"), and did not implicate sovereign immunity. (Paper 30). Simultaneously, in a margin endorsement, the Court denied Adelphia's motion to amend its complaint. (Paper 17). In this Court's view, it was no longer necessary for Adelphia to amend its complaint following denial of the Board's motion to dismiss.

The Board and the Department appealed. In an unpublished summary order, the Second Circuit relied upon the newly-decided *Verizon Maryland Inc. v. Public Service Commission of Maryland,* 535 U.S. 635, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002) and expressed concern that the defendants might be entitled to sovereign immunity. Instead of so holding, however, the Second Circuit vacated this Court's order denying Adelphia's motion to amend the complaint. The Second Circuit stated:

> In light of *Verizon Maryland,* and to avoid a constitutional question if it is possible and appropriate to do so, we vacate the district court's order denying Adelphia's motion seeking leave to file an amended complaint adding the individual members of the Board as party defendants. In addition, we remand to the district court for consideration of Adelphia's motion on the merits. If the district court grants the motion, it should also express its view as to whether Adelphia can proceed under *Ex parte Young.*

Therefore, this Court must now examine the merits of Adelphia's motion to amend its complaint and, in the process, resolve complex problems concerning the limits of federal courts' jurisdiction.

## DISCUSSION

1. *Rule 15: Standards for Amending Complaint*

■■■ The standards for amending a complaint are easy to state but deceptively difficult to apply on the facts of this case. It bears repeating, however, that leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). In determining whether to grant leave to amend, the Court should consider whether the motion is being made after an inordinate delay without adequate explanation, whether prejudice to the defendants would result, whether granting the motion would cause further delay, and whether the amendment would be futile. *See Grace v. Rosenstock,* 228 F.3d 40, 53–54 (2d Cir. 2000) (reciting factors to consider).

There can be no serious argument that prejudice to the defendants would result from plaintiffs amending their complaint. The present motion does not change the plaintiffs' substantive allegations nor their theory of liability. It serves only to change the names of the defendants and not where ultimate liability may lie. In fact, the present motion would no more prejudice the defendants than a motion to amend the caption; it has no substantive effect on the individual defendants sought to be added. Likewise, plaintiffs' amendment will not result in any further delays in this litigation. And, while a substantial amount of time has passed since plaintiffs filed their initial complaint, the timing of the present motion is a result of the recent emergence of the Eleventh Amendment issue. The most difficult inquiry, then, is whether plaintiffs' amendment would be futile in light of *Ex parte Young* and its progeny.

2. *Ex Parte Young*

■■■ In its long-standing exception to Eleventh Amendment sovereign immunity, *Ex parte Young* "permits federal courts to enjoin state officials to conform their conduct to requirements of federal law, notwithstanding a direct and substantial impact on the state treasury." *Milliken v.*

*Bradley,* 433 U.S. 267, 289, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977); *see also Alden v. Maine,* 527 U.S. 706, 756–57, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) (providing extensive discussion of Eleventh Amendment immunity, but noting that it "does not bar certain actions against state officers for injunctive or declaratory relief"); *Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) ("[A] federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law"). However, for an injunction to fall within the *Ex parte Young* exception to Eleventh Amendment immunity, it must provide prospective and not retrospective relief. *See Quern,* 440 U.S. at 336, 99 S.Ct. 1139. Distinguishing between prospective and retrospective relief is by no means an easy task. But here, enjoining the individual Board members from enforcing the Board's order would fall on the *Ex parte Young* side of the Eleventh Amendment.

In an analogous factual setting, the Supreme Court recently addressed whether the Eleventh Amendment barred Verizon from suing a Maryland State Commission to enjoin enforcement of an order requiring payment of certain monies to another company. The suit was brought pursuant to the Telecommunications Act of 1996 (the "1996 Act"), and specifically 47 U.S.C. § 251(c). The Maryland State Commission argued that the Eleventh Amendment barred the suit. The Supreme Court, however, held that the Commission's immunity "is another question we need not decide, because ... Verizon may proceed against the individual commissioners in their official capacities, pursuant to the

doctrine of *Ex parte Young.*" *Verizon Maryland,* 122 S.Ct. at 1760.

According to the Supreme Court, "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Id.* (internal quotation marks and alterations omitted). In that case, "The prayer for injunctive relief—that state officials be restrained from enforcing an order in contravention of controlling federal law—clearly satisfies our 'straightforward inquiry.'" *Id.*

■ In all relevant respects, the Eleventh Amendment inquiry in *Verizon Maryland* is squarely on point. Here, too, plaintiffs seek injunctive relief restraining state officials from enforcing an order that, according to plaintiffs, violates federal law. This is precisely the situation in which *Ex parte Young* applies. *See MCI Telecomm. Corp. v. Ill. Bell Tel. Co.,* 222 F.3d 323, 345 (7th Cir.2000) (holding that suit to enjoin state officials' enforcement of order under 1996 Act is "straightforward" *Ex parte Young* case); *MCI Telecomm. Corp. v. Pub. Serv. Comm'n of Utah,* 216 F.3d 929, 939 (10th Cir.2000) (same); *Mich. Bell Tel. Co. v. MFS Intelenet of Mich., Inc.,* 16 F.Supp.2d 817, 826 (W.D.Mich.1998) (citing cases).[1]

### 3. *Seminole Tribe*

■ Defendants respond by invoking an exception to *Ex parte Young* announced by the Supreme Court in *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). According to the Supreme Court, "Where

---

1. Plaintiffs in this case also seek a declaratory judgment. This relief is also available under *Ex parte Young* because "[i]nsofar as the exposure of the State is concerned, the prayer

for declaratory relief adds nothing to the prayer for injunction." *Verizon Maryland,* 122 S.Ct. at 1760.

Congress has prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right, a court should hesitate before casting aside those limitations and permitting an action against a state officer based upon *Ex parte Young.*" *Id.* at 74, 116 S.Ct. 1114. Therefore, "suits against individual state officers in their individual capacities for on-going violations of federal law are not available when Congress has enacted a comprehensive remedial scheme intended to be the sole remedy for violations of federal law." *AT & T Communications v. BellSouth Telecomms., Inc.,* 238 F.3d 636, 648 (5th Cir.2001).

The Supreme Court has recently held, however, that the 1996 Act does not contain a remedial scheme sufficient to supplant *Ex parte Young. See Verizon Maryland,* 122 S.Ct. at 1761 ("The commission's argument that § 252(e)(6) constitutes a detailed and exclusive remedial scheme like the one in *Seminole Tribe,* implicitly excluding *Ex parte Young* actions, is without merit."). This is in accordance with a number of prior decisions from the lower federal courts addressing the remedial scheme in the 1996 Act. *See, e.g., AT & T v. BellSouth,* 238 F.3d at 648; *Mich. Bell Tel. Co. v. Climax Tel. Co.,* 202 F.3d 862, 867–68 (6th Cir.2000); *AT & T Communications of Mich., Inc. v. Mich. Bell Tel. Co.,* 60 F.Supp.2d 636, 640 (E.D.Mich. 1998). The relevant question here boils down to the following: does the remedial scheme in the Cable Act more closely resemble the Indian Gaming Regulatory Act ("IGRA") at issue in *Seminole Tribe* (in which case, *Ex parte Young* does not apply), or the 1996 Act (in which case *Ex parte Young* does apply)?

Here, again, *Verizon Maryland* is instructive. In that case, the Supreme Court held that § 252(e)(6) of the 1996 Act did not provide a sufficiently detailed remedial scheme to supplant *Ex parte Young* because

> That section provides only that when state commissions make certain "determinations," an aggrieved party may bring suit in federal court to establish compliance with the requirements of §§ 251 and 252. Even with regard to the "determinations" that it covers, it places no restriction on the relief a court can award. And it does not even say whom the suit is to be brought against— the state commission, the individual commissioners, or the carriers benefitting from the state commissions's order.

*Verizon Maryland,* 122 S.Ct. at 1761.

Other courts have looked to similar factors. For example, the Fifth Circuit reasoned:

> The 1996 Act, however, does not severely limit relief available to an aggrieved party as does the IGRA. Section 252(e)(6) of the 1996 Act simply provides that, if the state commission makes a determination under that section, any aggrieved party may bring suit in federal court to determine whether the determination meets the Act's requirements. The 1996 Act does not limit jurisdiction of the federal courts to entertain suits in law or equity for prospective relief from on-going violations of federal law by state officials acting in their official capacities. It thus cannot be said that Congress intended in the 1996 Act to limit significantly the federal judicial remedies available to an aggrieved party authorized to bring suit in an appropriate federal court.

*AT & T v. BellSouth,* 238 F.3d at 648; *cf also. Reynolds v. Giuliani,* 118 F.Supp.2d 352, 382 (S.D.N.Y.2000) ("The 'detailed remedial scheme' that exists in the [IGRA], such as delineated procedures limiting the remedies that federal courts can impose in

the event of a violation, is absent in the Food Stamp and Medicaid Acts.").

Defendants argue that the Cable Act's remedial scheme is sufficiently detailed and comprehensive to preclude application of *Ex parte Young*. They point to 47 U.S.C. §§ 546(e)(2)(A)-(B) which provides that a court may grant appropriate relief only if (1) a franchising authority failed to follow the procedural requirements of 47 U.S.C. § 546, or if the franchising authority's decision regarding a cable operator's proposal was not based upon a preponderance of the evidence.[2]

Defendants' argument proves too much, however, because their description of the Cable Act's limitations on judicial review apply equally to the 1996 Act. The 1996 Act also provides the specific bases upon which judicial relief may be obtained. In particular, 47 U.S.C. § 252(e)(6) provides recourse to a Federal district court only to decide whether a state commission's determination followed the procedural requirements set forth in § 252, or whether it comports with the substantive requirements of 47 U.S.C. § 251.[3] In other words, judicial review under both the 1996 Act and the Cable Act is limited to challenging the conformity of an agency's action with specified procedural requirements and statutorily enumerated substantive considerations. Since, as noted above, the Supreme Court and other cir-

cuit courts have expressly held that the 1996 Act's remedial scheme is not sufficiently detailed and comprehensive for *Seminole Tribe* to apply, the same conclusion must apply to the Cable Act.

Defendants point to one important difference between the Cable Act and the 1996 Act: the Cable Act broadly proscribes suits for damages. *See* 47 U.S.C. § 555a(a). There are, therefore, restrictions to the relief a Court may afford. However, the Cable Act does not limit the injunctive or declaratory remedies courts may issue, permitting courts to award any "appropriate relief" that does not include damages. *See* 47 U.S.C. §§ 546(e)(2), 555(b). This is notably distinct from the IGRA which provides a single judicial remedy for failing to negotiate in good faith: ordering mediation. *See Seminole Tribe,* 517 U.S. at 74, 116 S.Ct. 1114; *see also Verizon Maryland* (describing IGRA as permitting a court to order the State to negotiate or mediate and concluding "that this quite modest set of sanctions displayed an intent not to provide the more complete and more immediate relief that would otherwise be available under *Ex parte Young.*") (internal quotation marks omitted).

■ The existence by itself of some limitation on the relief a court may afford does not foreclose application of *Ex parte*

---

**2.** 47 U.S.C. § 546(e)(2) provides, in its entirety:

The court shall grant appropriate relief if the court finds that—
(A) any action of the franchising authority, other than harmless error, is not in compliance with the procedural requirements of this section; or
(B) in the event of a final decision of the franchising authority denying the renewal proposal, the operator has demonstrated that the adverse finding of the franchising authority with respect to each of the factors described in subparagraphs (A) through (D) of subsection (c)(1) of this section on which

the denial is based is not supported by a preponderance of the evidence, based on the record of the proceeding conducted under subsection (c) of this section.

**3.** 47 U.S.C. § 252(e)(6) states, in relevant part: "In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 of this title and this section."

*Young.* The question, instead, is whether Congress intended to supplant federal courts' power under *Ex parte Young,* and replace that judge-made rule with its own comprehensive statutory remedies. *See Rosie D. v. Swift,* 310 F.3d 230, 235–36 (1st Cir.2002) (analyzing *Seminole Tribe* and *Verizon Maryland,* and finding that critical question is congressional intent to limit remedies). The Cable Act's proscription against monetary damage awards creates a remedial scheme that is no narrower than the prospective injunctive relief available under *Ex parte Young.* This is particularly good evidence that Congress did not intend to eliminate *Ex parte Young* jurisdiction but instead intended to create a remedial scheme consistent with *Ex parte Young.*

On the whole, the Cable Act's remedial scheme is closely analogous to the 1996 Act and distinct from the limiting provisions of the IGRA. Accordingly, Plaintiffs in this case are not precluded by *Seminole Tribe* from seeking prospective injunctive relief against individual state officers in their official capacity.

### 4. *Relation Back*

■ Defendants argue that even if leave to amend is granted, Adelphia's amended complaint is time-barred. Indeed, Adelphia's amended complaint is timely only if it relates back to the date of the original complaint. *See* 47 U.S.C. § 555(a) (affording 120 days to challenge final determinations by franchising authority). Defendants argue that Fed.R.Civ.P. 15(c) prevents Adelphia's amended com-

plaint from relating back to the filing of the original complaint in this case.

Ordinarily, an amendment to a pleading that attempts to bring in a new party will be permitted to relate back to the date of the original pleading if the party to be brought in

(A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed.R.Civ.P. 15(c)(3); *see also Soto v. Brooklyn Correctional Facility,* 80 F.3d 34, 35–38 (2d Cir.1996) (describing requirements of Rule 15(c)(3)).

There can be no real question that the individual Board members knew about the suit against the Board and, as discussed above, would not be prejudiced if they are included as defendants in their official capacities. The more difficult question is whether Adelphia's failure to include the individual defendants in their original complaint may be properly characterized as a mistake. Two cases are particularly instructive.[4]

In *Cornwell v. Robinson,* 23 F.3d 694 (2d Cir.1994), plaintiff sued her employer for various violations arising out of discrimination in the workplace. She later amended her original complaint to include the individual co-workers whose discriminatory conduct formed the basis for the lawsuit. The Second Circuit held that this

---

4. Defendants point to two additional cases that are plainly inapposite. *See Wayne v. Jarvis,* 197 F.3d 1098, 1101 (11th Cir.1999); *Barrow,* 66 F.3d at 467. In both cases, plaintiffs amended complaints to replace a "John Doe" defendant with a named defendant, and the respective courts held that lack of knowledge of the individual defendants was not a

"mistake" within the meaning of Rule 15(c) that would permit the amended complaint to relate back. *See Wayne,* 197 F.3d at 1103; *Barrow,* 66 F.3d at 469. Adelphia's failure to include the individual Board members in its original complaint was not a result of lack of knowledge about their identities.

amendment did not relate back to the original complaint and was therefore untimely. In rejecting plaintiff's argument, the Second Circuit focused on the fact that plaintiff was not required to sue the individual defendants in addition to the named institutional defendant "and her failure to do so in the original complaint, in light of her obvious knowledge and the detailed nature of that pleading's exhibit, must be considered a matter of choice, not mistake." *Cornwell*, 23 F.3d at 705.

In contrast, plaintiff in *Soto* was an inmate in the Brooklyn Correctional Facility ("BCF"). Following an incident of alleged neglect by corrections officers, he sued the BCF under 42 U.S.C. § 1983, but failed to name the individual officers as defendants. The Second Circuit reasoned that plaintiff "was required to sue the individual defendants to maintain an action . . . . His failure to do so cannot be considered a matter of choice; but for his mistake as to the technicalities of constitutional tort law, he would have named the officers in the original complaint." *Soto*, 80 F.3d at 37. " 'Mistake' as used in Rule 15(c) applies to mistakes of law as well as fact," *Soto*, 80 F.3d at 36 (quoting *Woods v. Indiana Univ.—Purdue Univ.*, 996 F.2d 880, 887 (7th Cir.1993)), and plaintiff's omission of the individual corrections officers was the kind of mistake referenced in Rule 15(c). According to *Soto*, the appropriate test in such a case is "whether, under clearly established law, the proper defendants knew that they, and not the named defendants, should have been sued." *Id.* at 36; *see also Barrow v. Wethersfield Police Dept.*, 66 F.3d 466, 469 (2d Cir.1996) (describing history of Rule 15(c)).

The present case lies somewhere between *Cornwell* and *Soto*. In light of this Court's prior ruling rejecting defendants' motion to dismiss, it would be impossible to conclude that Adelphia's complaint named the wrong defendants "under clear-ly established law." Indeed, the Second Circuit did not foreclose the possibility of proceeding against the Board itself but merely noted that the case as styled implicated the Eleventh Amendment. Therefore, unlike in *Soto*, Adelphia's original complaint was not obviously flawed on its face.

However, this is also not a case in which the Plaintiffs made a tactical decision to exclude the individual Board members from their original complaint. Adelphia sought no strategic advantage by excluding them originally. In fact, this case implicates the same set of general policy considerations motivating Rule 15(c). As the Second Circuit has observed, the language in Rule 15(c)(3) "was prompted by several cases in which plaintiff, unaware of the technical requirements of the law, mistakenly named institutional instead of individual defendants." *Soto*, 80 F.3d at 35. In its interpretation of the present Rule 15(c), the Second Circuit also looked to the 1966 Amendments, stating that Rule 15(c)(3) "cures the problems that arise, for example, when a defendant mistakenly sues an agency of the government without knowing that the cause of action requires the defendant to sue an agency head." *Barrow*, 66 F.3d at 469.

While the amendment Adelphia seeks here is arguably more substantive than an amendment to correct a simple misnomer or misidentification of a party, it has considerably less in common with the kinds of strategic amendments at issue in the cases cited by Defendants. Ultimately, the effect of the amendment is to avoid a complex Eleventh Amendment issue by participating in the legal fiction of *Ex parte Young*. *See, e.g., Cardenas v. Anzai*, 311 F.3d 929, 935 (9th Cir.2002) ("The Ex parte Young doctrine is founded on the legal fiction that acting in violation of the Constitution or federal law brings a state

officer into conflict with the superior authority of the Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct.") (internal quotation marks omitted). Failing to anticipate the technical Eleventh Amendment defense raised by the Board and the possible *Ex parte Young* exception to that defense, is, on the facts of this case, the kind of mistake referred to by Rule 15(c).

Accordingly, Adelphia's amended complaint will relate back to the date of the filing of its original complaint and is not futile as time-barred. Because Adelphia's amended complaint relates back to its original complaint, it is unnecessary to consider the Defendants' remaining arguments concerning *res judicata* and the preclusive effect of the Board's Opinion and Order.

CONCLUSION

Because leave to amend "shall be freely given when justice so requires," Fed. R.Civ.P. 15(a), amendment in this case would not be futile, and Defendants will suffer no prejudice as a result of the amendment, Plaintiff's motion to amend the complaint to add the individual Board Members as defendants in their official capacity is GRANTED.

SO ORDERED.