**Michael HOOTSTEIN, et al., Plaintiffs**

**v.**

**Joseph COLLINS, et al., Defendants.**

**No. 08–CV–30113–MAP.**

United States District Court,
D. Massachusetts.

Nov. 19, 2009.

Mary–Elizabeth S. Fox, Law Office of Mare S. Fox, Shutesbury, MA, for Plaintiffs.

William P. O'Neill, Office of the Attorney General, Springfield, MA, for Defendants.

Doris H. White, Attorney General's Office, Boston, MA, for Interested Party.

*MEMORANDUM AND ORDER REGARDING DEFENDANT LEWIS "HARRY" SPENCE'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT* (Dkt. No. 47)

PONSOR, District Judge.

## I. INTRODUCTION

Plaintiffs Michael Hootstein, Kathlyn Stein, and their minor grandchild, M.R. (collectively, "Plaintiffs"), filed suit against a number of current and former employees of the Massachusetts Department of Children and Families ("DCF"),[1] alleging, *inter alia*, that Defendants violated Plaintiffs' constitutional rights under the First, Fourth, and Fourteenth Amendments to the U.S. Constitution, deprived them of civil rights guaranteed by Massachusetts law, and failed to comply with Mass. Gen. Laws ch.66A and numerous state regulations. All of these allegations relate to abuses that Plaintiffs claim they suffered during the course of child custody proceedings in both Juvenile and Family and Probate courts from January 2004 to September 25, 2006.

Plaintiffs originally filed suit against five current or former DCF employees in their individual capacities, seeking monetary damages. After receiving permission from this court to amend their complaint, on May 5, 2009, Plaintiffs filed an amended

---

1. The DCF was formerly known as the Department of Social Services. The Department changed its name in July 2008. For clarity's sake, this memorandum will only use the Department's current name.

complaint to add a claim for "injunctive and equity relief" against former DCF Commissioner, Lewis "Harry" Spence ("Defendant Spence"), in his official capacity. In the motion currently at issue, Defendant Spence moves to dismiss the claim for injunctive and equitable relief against him in his official capacity (he was not named in his individual capacity) under Fed.R.Civ.P. 12(b)(1) and 12(b)(6) for failure to state a claim for which relief can be granted. Defendant Spence claims that the suit against him is precluded by the Eleventh Amendment of the U.S. Constitution. For the reasons cited below, Defendant Spence's motion to dismiss will be ALLOWED.

## II. *FACTS*[2]

Plaintiffs Michael Hootstein and Kathlyn Stein ("Plaintiff Grandparents") are the maternal grandparents of M.R. (the "grandson"), a minor child who first came to DCF's attention when the agency began investigating reports that his biological parents were abusing and/or neglecting him. Plaintiff Grandparents were actively involved in this investigation from the beginning, informing DCF that their daughter, their grandson's mother, suffered from an untreated mental health disability that negatively affected her capacity to take care of their grandson.

On several occasions, Plaintiff Grandparents contacted DCF or filed formal complaints, alleging that their grandson was being emotionally abused by his mother and by the DCF social worker assigned to the investigation. Eventually, the grandson began staying with Plaintiff Grandparents three or four nights a week, and Plaintiff Grandparents sought and obtained written consent from their grandson's parents to seek permanent co-guardianship. Some time in mid–2004, *Plaintiff Grandparents* formally petitioned the Greenfield Family and Probate Court for approval of this guardianship arrangement.

Plaintiff Grandparents allege that, during the course of the custody proceedings that followed in both the Juvenile and Family and Probate Courts, various members of DCF: (1) obstructed the ultimate resolution of their petition for guardianship by filing "secret" petitions with the Greenfield Juvenile Court that purposefully omitted or otherwise concealed material information provided by Plaintiff Grandparents; (2) threatened Plaintiff Grandparents that they would never see their grandson again if they challenged DCF's actions in court; (3) placed the grandson in a foster home where he was subjected to emotional abuse; (4) forced Plaintiff Grandparents and their dog to undergo unnecessary psychological evaluations; (5) prevented Plaintiff Grandparents from attending various hearings about their grandson and defamed Plaintiff Grandparents in those proceedings; (6) engaged in a number of discriminatory practices against Mr. Hootstein because of his gender; (7) failed to investigate various complaints of abuse and discrimination against DCF employees, as required by the department's regulations; (8) forcefully removed the grandson from their custody in violation of DCF regulations; and (10) conspired together to violate various Massachusetts statutes, DCF regulations, and Plaintiffs' constitutional rights.

Regardless of whether this discriminatory conduct actually occurred or not—and this court can obviously take no position on

---

2. All of the facts are drawn from Dkt. No. 37, Plaintiffs' Amended Complaint. Because they are not essential for deciding this motion, this memorandum will only very briefly summarize Plaintiffs' voluminous factual allegations.

the truth of these allegations at this time—ultimately, on September 25, 2006, the Greenfield Division of the Juvenile Court granted Plaintiff Grandparents' guardianship petition.

According to Plaintiffs, Defendant Spence knew about Plaintiff Grandparents' repeated allegations of abuse, discrimination, and retaliation because Plaintiff Grandparents detailed DCF's actions in numerous complaints that they submitted directly to Defendant Spence in phone calls, letters, faxes, and in at least one face-to-face meeting. Plaintiff Grandparents also claim that Defendant Spence was aware of their alleged mistreatment because they communicated their allegations to DCF's ombudsman, who reported directly to Defendant Spence. Despite all of Plaintiff Grandparents' purported efforts to encourage Defendant Spence to intervene on their behalf, they claim that he took no action to put an end to the alleged misconduct by DCF. Additionally, Plaintiff Grandparents also complain that Defendant Spence maintained a set of policies and procedures at DCF that empowered the various employees to violate their constitutional and statutory rights. Plaintiff Grandparents filed their Amended Complaint adding the count against Defendant Spence in his official capacity on May 5, 2009; however, as of July 25, 2008, Defendant Spence was no longer DCF Commissioner.

## III. DISCUSSION

In Count XIII of their Amended Complaint, Plaintiff Grandparents seek "injunctive and equity relief" from Defendant Spence in his official capacity, alleging that he "continues to maintain" policies and customs that "caused injury to Plaintiffs, and continues to cause injury to other children and families" by encouraging "partisan politics, retaliation, and lawlessness against Plaintiffs and others on the basis of their protected political speech and due process activities in defense of a truly inclusive set of traditional American family values that include opposite sex marriages and relationships." (Dkt. No. 37, ¶¶ 199–200.)

This portion of Plaintiff Grandparents' Amended Complaint goes on to detail a number of Massachusetts statutes and DCF regulations that Plaintiffs claim Defendant Spence violated "and continues to violate." As part of the "injunctive and equity relief" detailed in Count XIII, Plaintiff Grandparents seek "their due Guardianship Subsidy support payments and services pursuant to 110 CMR 7.303," awarded retroactively, "with interest, penalties and related costs." (Dkt. No. 37, ¶ 198.) Defendant Spence has moved to dismiss the claim against him, arguing that it is barred by the Eleventh Amendment and the doctrine of sovereign immunity.

### A. Sovereign Immunity Under the Eleventh Amendment

As a general matter, the Eleventh Amendment bars suits for money damages that are brought by citizens in federal courts against any state, including "official capacity" suits against state officials. *Rosie D. ex rel. John D. v. Swift*, 310 F.3d 230, 234 (1st Cir.2002). However, this proscription is subject to an important exception recognized over a century ago in *Ex parte Young*, 209 U.S. 123, 159–160, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

Under the *Ex parte Young* exception, federal courts can enjoin state officials from continuing to violate the U.S. Constitution or other federal law, "notwithstanding the absence of consent, waiver or evidence of congressional assertion of national hegemony." *Rosie D. ex rel. John D.*, 310 F.3d at 234 (quoting *Lane v. First Nat'l Bank*, 871 F.2d 166, 172 n.5 (1st Cir.1989)). Thus, where a plaintiff

seeks purely prospective equitable relief against individual state officers in a federal forum based on a federal right, the Eleventh Amendment is usually not a bar. *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 276–277, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997). This exception is predicated on the legal fiction that, when a Plaintiff seeks only prospective injunctive relief and not retrospective monetary relief that would be paid out of the state's treasury, the suit is only against the state official and not against the state itself. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 102, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).[3]

The *Ex parte Young* doctrine, then, only allows federal courts to exercise jurisdiction over a suit in which the plaintiff alleges ongoing violations of federal law; suits that seek redress of past wrongs are still barred by the Eleventh Amendment. *See Papasan v. Allain,* 478 U.S. 265, 277–78, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (noting that *"Young* has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past."). Additionally, federal courts have no jurisdiction to entertain suits that seek to require that the state official comply with *state* laws. *See Pennhurst,* 465 U.S. at 106, 104 S.Ct. 900 ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.").

**B. *Standard of Review***

In determining whether the doctrine of *Ex parte Young* avoids an Eleventh

Amendment bar to suit, a court need only conduct a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Public Service Com'n of Maryland,* 535 U.S. 635, 645, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. at 296, 117 S.Ct. 2028). This inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim, *Verizon Maryland, Inc.,* 535 U.S. at 646, 122 S.Ct. 1753, and the pivotal question to be decided when a defendant brings a motion to dismiss is whether the requested relief would directly bring an end to an ongoing violation of federal law. *Papasan,* 478 U.S. at 278, 106 S.Ct. 2932.

**C. *Count XIII***

**a. *The Applicability of the Ex parte Young Exception***

As outlined above, Count XIII of Plaintiffs' Complaint seeks "injunctive and equity" relief against Defendant Spence in his official capacity as the former DCF Commissioner. Plaintiffs argue that the *Ex parte Young* exception should apply in this case and that they should be allowed to proceed with their suit. However, Plaintiffs have not adequately pled any ongoing violation of federal law that would bring this action under the *Ex parte Young* umbrella.

First, while Plaintiffs repeatedly disclaim the notion that they are seeking anything other than injunctive or equitable relief, Count XIII plainly includes a demand for guardianship support payments

---

**3.** A federal court can order prospective relief that has an impact on the state treasury, provided that the impact on the state treasury is only an ancillary result of requiring that the

state official conform his or her conduct to the dictates of federal law. *Edelman v. Jordan,* 415 U.S. 651, 667, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

that Plaintiffs claim they did not receive, and are still not receiving, in violation of DCF regulations. The demand for past support payments is a straightforward claim for retroactive monetary damages and cannot be heard in a case brought in federal court against a state official. *Edelman*, 415 U.S. at 663–65, 94 S.Ct. 1347.[4] The claim for future support payments, meanwhile, is couched solely as a demand that a former state official comply with state regulations. As discussed above, however, federal courts have no jurisdiction to entertain suits that seek to require that a state official comply with state laws or regulations. *Pennhurst*, 465 U.S. at 106, 104 S.Ct. 900. Thus, Plaintiffs' claims for both prospective and retrospective support payments cannot be heard in this court.

The rest of Count XIII alleges that Defendant Spence violated and "continues to violate" various state statutes and DCF regulations.[5] While this may or may not be true, as outlined above, a federal court cannot hear suits in which a plaintiff attempts to force a state official to comply with state law. In sum, Plaintiffs' complaint, on its face, fails to identify any ongoing violations of federal law that they seek to enjoin, and this court cannot identify any potential injunctive or equitable relief that it could order without running afoul of the Eleventh Amendment.[6]

**b. Constructive Waiver**

 In their opposition to Defendant Spence's Motion to Dismiss, Plaintiffs make a brief argument that the doctrine of

---

**4.** In their Memorandum in Opposition to Defendant Lewis "Harry" Spence's Motion to Dismiss Plaintiffs' Amended Complaint, Dkt. No. 64, and again at oral argument, Plaintiffs contended that *Concilio de Salud Integral de Loiza, Inc. v. Perez–Perdomo*, 551 F.3d 10, 18 (1st Cir.2008), establishes that this court could indeed entertain an action for retroactive monetary relief. In both instances, however, Plaintiffs omitted a crucial portion of the footnote from which they quoted in order to bolster their argument. In *Concilio de Salud Integral de Loiza, Inc.*, the plaintiffs sought, among other relief, money they were owed as a result of the state official's past non-compliance with the district court's preliminary injunction. *Id.* The court mentioned in a footnote that ordering the defendant to make retroactive payments to the plaintiffs to remedy the defendant's failure to comply with the court's valid preliminary injunction would not run afoul of the Eleventh Amendment. *Id.* at 18 n. 8. Despite Plaintiffs' counsel's misleading use of ellipses, this case does not overturn well-established Eleventh Amendment doctrine and does not apply here.

**5.** Other portions of Plaintiffs' complaint undercut any argument that Plaintiffs continue to suffer because of Defendant Spence's ongoing violations of federal law. For example, in the second paragraph of their Amended Complaint, Plaintiffs allege that the violations of their constitutional rights only occurred during the pendency of the custody proceedings or "[f]rom January 2004 to September 25, 2006." (Dkt. No. 37, ¶ 2.) Although Count XIII also claims that Plaintiffs are seeking relief on behalf of other parties "who are currently victimized by similarly described state sponsored abuse," Plaintiffs do not have standing to assert the legal rights of others. *See Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) ("[T]his Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.").

**6.** Additionally, even if the court were to read Plaintiffs' complaint as alleging an ongoing violation of federal law, it seems unlikely that Defendant Spence is even the proper party in this suit. As noted above, Plaintiffs filed their Amended Complaint on May 5, 2009, well after Defendant Spence was no longer DCF Commissioner. A suit seeking prospective relief should be directed at an official who has the power to correct the ongoing violations of federal law, especially since *Ex parte Young* instructs that the state officer against whom a suit is brought "must have some connection with the enforcement of the act" that is in continued violation of federal law. *Ex parte Young*, 209 U.S. at 154, 157, 28 S.Ct. 441.

constructive waiver may apply to this case and that the state may have impliedly consented to suit. However, the decision to waive Eleventh Amendment immunity is altogether voluntary on the part of the sovereign, and the Supreme Court's test for determining whether a state has waived its immunity from federal court jurisdiction is therefore stringent. *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 675, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999). "The mere fact that a state operates a program of public aid or assistance that the federal government helps fund is not sufficient to establish the state's consent to be sued in the federal courts." *Edelman,* 415 U.S. at 673, 94 S.Ct. 1347. The doctrine of constructive waiver holds that a state will have waived its Eleventh Amendment immunity and consented to suit *only* if it accepts from Congress a gift or gratuity, the receipt of which is conditioned upon a waiver of sovereign immunity. *College Sav. Bank,* 527 U.S. at 686–87, 119 S.Ct. 2219. Plaintiffs in this case have failed to identify any gift or gratuity from Congress that Massachusetts accepted that carried a waiver of sovereign immunity with it. Thus, this argument that constructive waiver applies is unavailing.[7]

## IV. CONCLUSION

For the foregoing reasons, Defendant Spence's Motion to Dismiss (Dkt. No. 47) is hereby ALLOWED.

It is So Ordered.

---

**7.** Plaintiffs also included a lengthy argument that the doctrine of qualified immunity should not serve as grounds for dismissal. Defendant Spence's Motion to Dismiss did not raise a qualified immunity defense, and the court has not relied on this doctrine in any way in reaching its conclusion on this motion.