# United States Court of Appeals
## For the First Circuit

No. 10-1758

UNITED STATES OF AMERICA,

Plaintiff, Appellant,

v.

COMMONWEALTH OF PUERTO RICO, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Lipez, Siler,* and Howard,
Circuit Judges.

April J. Anderson, Attorney, Department of Justice, Civil Rights Division, with whom Thomas E. Perez, Assistant Attorney General, and Dennis J. Dimsey, Attorney, Department of Justice, Civil Rights Division, were on brief, for appellant.
Michael C. McCall, with whom Aldarondo & López Bras, P.S.C. was on brief, for appellees.

May 26, 2011

_____

*Of the Sixth Circuit, sitting by designation.

**LIPEZ**, **Circuit Judge**.  In this appeal, the United States challenges the district court's refusal to find the Commonwealth of Puerto Rico in contempt for failing to comply with court-ordered measures aimed at improving conditions in the Commonwealth's juvenile correctional facilities.  The Commonwealth asserts, among other arguments, that we do not have jurisdiction to hear the appeal because it is either moot or unripe.  Indeed, the remedial order at issue was suspended in early 2010, as required by the Prison Litigation Reform Act ("PLRA"), because the Commonwealth's motion to modify or terminate the order had been pending for 180 days.  See 18 U.S.C. § 3626(e)(2)(A)(ii).

As a practical matter, then, the United States seeks to hold the Commonwealth in contempt for failing to abide by an order that is not presently in effect and may never be reactivated.  Given the nature of civil contempt in this context as a forward-looking sanction, we can only conclude that this appeal is unripe.  If we evaluated the correctness of the contempt ruling now, and the district court subsequently decided not to reinstate the remedial order, our decision would be an impermissible advisory opinion.  See Ala. State Fed'n of Labor v. McAdory, 325 U.S. 450, 461 (1945) (noting the Court's "considered practice not to decide abstract, hypothetical or contingent questions"); Chico Serv. Station, Inc. v. Sol P.R. Ltd., 633 F.3d 20, 35 (1st Cir. 2011) ("Article III 'ensures that courts do not render advisory opinions.'" (quoting

<u>Overseas Military Sales Corp.</u> v. <u>Giralt-Armada</u>, 503 F.3d 12, 17 (1st Cir. 2007)); <u>W.R. Grace & Co.</u> v. <u>EPA</u>, 959 F.2d 360, 366 (1st Cir. 1992) (discussing ripeness and noting that, when a claim rests on contingent future events, it can "'involve [judges] in deciding issues unnecessarily, wasting time and effort'" (quoting <u>Roosevelt Campobello Int'l Park Comm'n</u> v. <u>EPA</u>, 684 F.2d 1034, 1040 (1st Cir. 1982)). Hence, we dismiss the appeal as premature, with the expectation that the district court will act expeditiously on the pending PLRA motion.

## I.

**A. Background**

This appeal originates from an action brought by the United States in 1994 seeking to remedy dangerous and allegedly unconstitutional conditions in Puerto Rico's juvenile correctional facilities.[1] The parties stipulated to a consent order the same day the action was filed[2] and, in 1997, they entered into a court-approved settlement agreement calling for various remedial measures, including increased staffing levels that were specified in Paragraph 48 of the agreement. Although conditions in the

---

[1] The action was brought against the Commonwealth, the Juvenile Institutions Administration, and various individuals, including the Governor and the directors of the juvenile facilities. For convenience, we refer to the defendants collectively as "the Commonwealth."

[2] The court approved the order and entered a consent decree in October 1994.

juvenile facilities improved somewhat over the next decade, staffing remained a problem, and episodes of violence, injury, and abuse continued. The Commonwealth nonetheless moved under the PLRA to terminate prospective relief in March 2007.[3] The ensuing negotiations between the parties produced a joint request that the court terminate certain provisions of the consent decree and settlement agreement while retaining or modifying others. The court accepted the proposal in an order issued on May 15, 2007. Paragraph 48 of the agreement was modified to allow the defendants to satisfy the staffing requirements either by meeting worker-to-juvenile ratios applicable to all facilities or by developing "alternate staffing rosters" for particular facilities that would be subject to court approval.

The parties continued sparring over the Commonwealth's failure to achieve the specified staff levels, however, and they

---

[3] The Supreme Court in Miller v. French, 530 U.S. 327 (2000), described the role of the PLRA, which was enacted in 1996:

> [T]he PLRA establishes standards for the entry and termination of prospective relief in civil actions challenging conditions at prison facilities. Specifically, a court "shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." The same criteria apply to existing injunctions, and a defendant or intervenor may move to terminate prospective relief that does not meet this standard.

Id. at 333 (citing 18 U.S.C. § 3626(a)(1)(A), (b)(2)).

again eventually resolved their differences through negotiation. In November 2008, reasserting their joint goal "to ensure full compliance with Paragraph 48," they moved the district court to adopt their latest agreement requiring Puerto Rico to hire fifty additional staff members each month "until Defendants achieve the goal to provide adequate supervision of youth in all facilities." The district court entered that stipulation as an order in January 2009 (the "January 2009 Order" or "the Order"). Six months later, in July 2009, the United States moved for an order holding the defendants in civil contempt because the Commonwealth had done no hiring at all.

In defending against the contempt motion, the Commonwealth explained that it was doing the best it could in light of an unprecedented budget crisis that had not been anticipated when the parties had agreed the previous November to retain the Paragraph 48 staffing goals. The Commonwealth detailed the steps it had taken in an attempt to comply with the January 2009 Order, including requesting an exception to a government hiring freeze, obtaining permission to use previously budgeted funds to retain one hundred juvenile services officers who were in temporary positions, closing some juvenile facilities, redistributing staff to improve the staff-to-youth ratio, increasing the use of technology to

-5-

supervise juveniles in less restrictive environments, and seeking new sources of funds.[4]

Simultaneously with its response to the contempt motion, the Commonwealth moved under the PLRA and Federal Rule of Civil Procedure 60(b)(5) to terminate or modify the prospective relief provisions in the Order. See 18 U.S.C. § 3626(b)(4); Fed. R. Civ. P. 60(b)(5).[5] Modifications were necessary, the Commonwealth explained, "to give the new administration flexibility in looking for varied methods of complying with ¶ 48 and to be allowed to creatively look for alternative ways of improving the youth-staff ratio." The Commonwealth further asserted that, given its economic circumstances, the fifty-hires-per-month requirement needed to be modified because it was not a "'narrowly-drawn' remedy" and, hence, was no longer appropriate under the PLRA. See 18 U.S.C. §

---

[4] The Commonwealth had filed an Informative Motion in February 2009 apprising the court of its newly discovered fiscal problems. It reported that the new administration had discovered a budget deficit of more than $3 billion and explained that "[t]his extremely dire economic emergency required immediate implementation of drastic austerity measures." The governor had ordered a hiring freeze on January 8, the same day the district court had approved the stipulation, and defendants were awaiting a response to their request for an exception so they could move toward meeting the Paragraph 48 obligations. Meanwhile, defendants reported that they were exploring "alternative means" to address those obligations.

[5] Under Rule 60(b)(5), a party may be relieved from an order if, inter alia, "applying it prospectively is no longer equitable." To obtain relief from a consent decree under the Rule, a party must "establish[] that a significant change in circumstances warrants revision of the decree." Rufo v. Inmates of Suffolk Cnty. Jail, 502 U.S. 367, 383 (1992).

3626(a)(1). Alternatively, the cross-motion sought outright termination of the January 2009 Order. The defendants asserted that they were already in "substantial compliance" with Paragraph 48 and would be in full compliance with the Order after adding one hundred officers under a pending proposal relying on federal funds.

In response, the United States argued, inter alia, that reports prepared by the court monitor indicated that compliance with staffing levels had in fact declined in recent months. The United States disputed the Commonwealth's contention that its fiscal crisis was unanticipated when the parties renewed their commitment to the Paragraph 48 levels in November 2008, and it challenged the Commonwealth's assertion that budgetary constraints made it impossible to meet the agreed-upon goals. The United States further asserted that the staffing requirements were consistent with the PLRA. It attributed the defendants' failure to meet the requirements to "their unwillingness to comply and to prioritize the safety of the youth confined within their juvenile facilities."

Under the PLRA, a motion such as the Commonwealth's seeking modification or termination of prospective relief triggers an automatic stay of remedial measures if the motion remains pending after 180 days. Id. § 3626(e)(2)(A)(ii). Once such a stay takes effect, reinstatement requires a finding by the court that,

inter alia, "the prospective relief is narrowly drawn and the least intrusive means to correct the violation."  Id. § 3626(b)(3).[6]

With the 180-day period set to expire on January 31, 2010, the United States filed a motion on December 31, 2009 urgently requesting the court to grant the contempt motion "to ensure that the Defendants sufficiently staff their juvenile facilities to protect youth from harm."  The United States cited "the deteriorating staffing situation, the extreme dangers that youth continue to face in understaffed facilities, and the Defendants' chronic noncompliance with th[e] Court's staffing orders," and it warned that a stay of the January 2009 Order pursuant to the PLRA "will further exacerbate already dangerous conditions in the facilities."  The Commonwealth filed an opposition on January 27, 2010, in which it detailed recent improvements in its staffing ratios.  Among other actions, the Commonwealth had obtained approval from the Office of Management and Budget to hire additional staff and replace departing staff.

---

[6] Section 3626 provides for prospective relief with respect to prison conditions "to correct the violation of the Federal right of a particular plaintiff or plaintiffs."  18 U.S.C. § 3636(a)(1).  Section 3626(b)(3) states in full:

> Prospective relief shall not terminate if the court makes written findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation.

-8-

It reported that forty-five new youth services officers would be completing training on February 17, and recruitment was underway to fill another 148 positions. Reassignments also had occurred as a result of facility closings. In another filing in late February, the Commonwealth reported that training was set to begin in March for approximately fifty potential youth services officers.

The district court took no action on either the contempt motion or the pending request to modify or terminate the January 2009 Order before 180 days had passed, and the prospective relief provisions were thus stayed on January 31, 2010. Once the Order was suspended, the contempt motion was effectively, if not technically, stayed as well because its object was to coerce immediate compliance with that Order. Nonetheless, without ruling on the Commonwealth's cross-motion for modification or termination, the district court on March 25 issued a one-paragraph order denying the motion for contempt:

> Having considered the United States' Motion for an Order Holding Defendants in Civil Contempt for Violation of the January 8 Stipulated Order on Staffing filed on July 2, 2009, the Commonwealth Defendants' Opposition filed on August 4, 2009, the United States' Memorandum in Reply filed on August 19, 2009 and the Commonwealth Defendants' Surreply filed on October 2, 2009, said motion for civil contempt is DENIED as the reasons adduced by the Commonwealth defendants show that they had been reasonably diligent in attempting to fulfill what was required in the Stipulated Order and their non-compliance with the terms of said Order was not the result of intentional actions and/or omissions.

(Docket entry numbers omitted.)

To date, the Commonwealth's cross-motion remains pending. On appeal, the Commonwealth argues that the PLRA's automatic stay rendered the contempt dispute moot at least until the district court rules on the motion to modify or terminate the January 2009 Order, and it thus asserts that we may not now review the district court's contempt ruling. To the extent the Order's possible reinstatement makes the mootness doctrine inapplicable, the Commonwealth argues that we would run afoul of the ripeness doctrine if we reviewed the contempt ruling before the district court decides whether to reactivate the Order. The United States counters that so long as the Order remains in place – albeit stayed – it is proper for us to review the Commonwealth's compliance with it.

As the following discussion reveals, the Commonwealth has the better argument.

## B. The Motion for Contempt and the PLRA

Unlike criminal contempt, which has a punitive function, civil contempt is imposed either to coerce compliance with a court order or to compensate a party harmed by non-compliance. McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949); United States v. United Mine Workers, 330 U.S. 258, 303-04 (1947); United States v. Saccoccia, 433 F.3d 19, 27 (1st Cir. 2005). The United States did not seek compensatory relief. Thus we focus solely on the contempt

sanction's purpose to "induce the purging of contemptuous conduct," In re Kave, 760 F.2d 343, 351 (1st Cir. 1985) (emphasis omitted).[7]

A finding of civil contempt ordinarily involves proof that the alleged contemnor had notice that he was subject to a "clear and unambiguous" order, that compliance is possible,[8] and that the order was in fact violated. Saccoccia, 433 F.3d at 27 (quotation marks and internal citation omitted). There can be no dispute here that the Commonwealth was aware of the January 2009 Order and failed to comply with it. The parties' debate concerns the Commonwealth's ability to comply and, relatedly, whether the terms of the Order continue to be an appropriate response to the conditions in the juvenile facilities.

---

[7] The United States argued in its memorandum in support of its motion for civil contempt that "a coercive monetary penalty is necessary to ensure compliance with the January 8 Stipulated Order." It requested a fine "equal to the monthly cost of maintaining fifty direct care staff," with the amount to diminish as the defendants achieved compliance with the ordered staffing ratios.

[8] The alleged contemnor bears the burden of production in defending a contempt motion based on inability to comply with the terms of the order in question. United States v. Rylander, 460 U.S. 752, 757 (1983); see also Maggio v. Zeitz, 333 U.S. 56, 75-76 (1948) ("[I]f he offers no evidence as to his inability to comply with the . . . order, or stands mute, he does not meet the issue. Nor does he do so by evidence or by his own denials which the court finds incredible in context."); Star Fin. Servs., Inc. v. AASTAR Mortg. Corp., 89 F.3d 5, 13 (1st Cir. 1996) ("While good faith will not excuse civil contempt, impossibility of compliance does constitute a defense."); Fortin v. Comm'r of Mass. Dep't of Pub. Welfare, 692 F.2d 790, 796 (1st Cir. 1982) ("[I]mpossibility would be a defense to contempt, but the [defendant] had the burden of proving impossibility, and that burden is difficult to meet." (citations omitted)).

As we have explained, however, the January 2009 Order has been stayed. Hence, there presently is no justification for a coercive sanction to induce the Commonwealth's compliance with that Order. The United States insisted at oral argument that we nonetheless may review the district court's denial of such a sanction because the Order has only been suspended, not abrogated, and the issue of contempt is consequently not moot "yet." That argument, however, collapses of its own weight. If the Order were certain to reactivate at some future time, we would agree that we could perform our review now in anticipation of its future resumption.

Where reactivation is neither automatic nor inevitable, however, any decision we reach may be without purpose or effect. See Miller, 530 U.S. at 354 (Breyer, J., dissenting) (noting that, once an injunction governing prison conditions is automatically stayed, it would "regain[] life only if, when, and to the extent that the judge eventually decided to deny the PLRA motion"). Such a contingent ruling would transgress the prudential considerations underlying the ripeness doctrine, including "the policy of judicial restraint from unnecessary decisions," McInnis-Misenor v. Me. Med. Ctr., 319 F.3d 63, 70 (1st Cir. 2003), and, given the contingency, may turn out to be an impermissible advisory opinion. See City of Fall River, Mass. v. F.E.R.C., 507 F.3d 1, 6 (1st Cir. 2007) ("[A] 'claim is not ripe for adjudication if it rests upon contingent

future events that may not occur as anticipated, or indeed may not occur at all.'" (quoting <u>Texas</u> v. <u>United States</u>, 523 U.S. 296, 300 (1998)) (internal quotation marks omitted))[9]; <u>see also</u> <u>Steir</u> v. <u>Girl Scouts of the USA</u>, 383 F.3d 7, 16 (1st Cir. 2004)("A court cannot hear an action that loses 'its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law.'" (quoting <u>Hall</u> v. <u>Beals</u>, 396 U.S. 45, 48 (1969) (per curiam))).

Indeed, as the United States acknowledges, the Commonwealth's defense to the United States' request for a contempt sanction overlaps with its argument that the requirements of the January 2009 Order are no longer appropriate under the PLRA. The defendants cite their limited financial resources both to explain

---

[9] Ordinarily, "[t]wo factors are used to evaluate ripeness: 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" <u>Doe</u> v. <u>Bush</u>, 323 F.3d 133, 138 (1st Cir. 2003) (quoting <u>Abbott Labs.</u> v. <u>Gardner</u>, 387 U.S. 136, 149 (1967)). Here, there will be no change in the United States' ability to secure enforcement of the January 2009 Order until the district court rules on the motion to modify or terminate the Order, and there is thus no "hardship" in the relevant sense in delaying appeal of the contempt ruling until after that decision is made. Because the Order is stayed, any ongoing hardship to the juveniles residing in the facilities is not the issue before us.
The fitness question turns not only on "'whether a court is capable of resolving a claim intelligently, but also involves an assessment of whether it is appropriate for the court to undertake the task.'" <u>Id.</u> at 139 (quoting <u>Ernst & Young</u> v. <u>Depositors Econ. Prot. Corp.</u>, 45 F.3d 530, 537 (1st Cir. 1995)). The contingent nature of the issue is one reason why our review is not appropriate at this time. <u>See</u> <u>McInnis-Misenor</u>, 319 F.3d at 72 ("[T]hat the future event may never come to pass augurs against a finding of fitness."). As we explain <u>infra</u>, it is not the only reason.

their inability to meet the staffing requirements of the January 2009 Order and to substantiate their contention that fifty-hires-per-month is neither "narrowly drawn" relief nor the "least intrusive means to correct the violation" of federal rights. See 18 U.S.C. § 3626(b)(3). The Commonwealth argues that the defendants should be allowed to work toward the staffing goals by alternative means, and it invokes the "creative efforts" it already has made – for example, consolidating facilities and obtaining outside funding – to demonstrate its good faith in complying with the spirit of the January 2009 Order.

We offer no view as to whether the Commonwealth's arguments have force either in defending against the contempt motion or showing a need for partial or full release from the January 2009 Order. The relevant considerations for our purposes are that those two issues are intertwined, and the one that is before us – the contempt ruling – may disappear with the district court's decision on the other. Moreover, even if the appeal were technically neither moot nor unripe, it would make no sense for us to review the district court's brief contempt ruling at this juncture. The court's yet-to-come ruling on the motion to modify or terminate the January 2009 Order will necessarily clarify and elaborate on the reasons it denied contempt sanctions. We urge the district court to make that ruling in short order. See Miller, 530 U.S. at 333 (noting that the PLRA "requires courts to rule

-14-

'promptly' on motions to terminate prospective relief"); 18 U.S.C. § 3626(e)(1).  Accordingly, the United States' appeal must be dismissed.

So ordered.