# United States Court of Appeals
## For the First Circuit

No. 10-1761

CASSANDRA HAWKINS, ET AL.,

Plaintiffs, Appellants,

v.

DEPARTMENT OF HEALTH AND HUMAN SERVICES
FOR THE STATE OF NEW HAMPSHIRE,
Commissioner

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, Jr., U.S. District Judge]

Before

Torruella, Selya and Lipez, Circuit Judges.

Kay E. Drought for appellants.
Danielle L. Pacik, Assistant Attorney General, with whom
Michael A. Delaney, Attorney General, and Nancy L. Smith, Senior
Assistant Attorney General, were on brief, for appellee.

January 13, 2012

**LIPEZ**, **Circuit Judge**.  In August 2003, the New Hampshire Department of Health and Human Services (the "Department") and a certified class of Medicaid-eligible children (the "Class") reached a settlement agreement and proposed a consent decree (the "Decree") that outlined the Department's obligations to provide dental services to Medicaid-enrolled children in accordance with federal law.  The district court approved the Decree on January 26, 2004.  Between January 2007 and January 2010, the Class filed four motions in the district court, alleging that the Department was not complying with its obligations under the Decree and seeking various remedies.  The district court denied each of the motions.

On appeal, the Class claims that the district court (1) erred by requiring the Class to file a motion for contempt[1] to enforce the Decree; (2) abused its discretion by denying the Class's 2010 motion for contempt; (3) abused its discretion by denying the Class's request for an evidentiary hearing in 2010; and (4) erred by holding the Class to a clear and convincing burden of proof on its 2010 motion to modify or extend the Decree.[2]  After careful review of the record, we affirm.

---

[1] "Motion for contempt" is used as shorthand throughout this opinion for what is technically a motion to show cause why the defendant should not be adjudged in contempt.

[2] Throughout this opinion, we refer to the Class's 2010 motion entitled "Motion for Modification of Consent Decree Based on the Defendant's Noncompliance with Federal Medicaid Law, or, in the Alternative, for an Order Extending the Terms of the Decree Based on the Defendant's Lack of Required Compliance" as the "motion to modify or extend the Decree."

In 1999, three mothers filed a proposed class action against the Department on behalf of their Medicaid-eligible children. Plaintiffs sought dental services for children in New Hampshire[3] under Title XIX of the Medicaid Act, which requires participating states to administer a health services plan that meets federal requirements, including provision of an Early and Periodic Screening, Diagnosis, and Treatment ("EPSDT") program. See 42 U.S.C. §§ 1396a(a)(43)(B), (C); Frew v. Hawkins, 540 U.S. 431, 433 (2004). A state's EPSDT program must include dental services. Rosie D. v. Swift, 310 F.3d 230, 232 (1st Cir. 2002).

After years of mediation and litigation, the parties reached a settlement in September 2003. The district court certified the plaintiffs as a class in January 2004 and approved the proposed Decree the same month. Under the terms of the Decree, the district court retained jurisdiction over the action for five years from the date of decree approval. On January 8, 2009, approximately two weeks before the five year period was set to expire, the parties agreed to modify the Decree by extending the court's jurisdiction by six months. At the end of the extension, the court retained

---

[3] The district court found that there were more than 55,000 Medicaid-eligible children in New Hampshire in May 2003. The certified class includes "all persons under age 21 who are now enrolled, or who become enrolled during the term of this Decree, in the New Hampshire Medicaid program and are, or become, entitled to receive EPSDT dental services."

jurisdiction for another six months to determine whether the Department was in compliance during the five years and six months of the primary term and, if not, what remedies were available.

Throughout the early years that the Decree was in place, the parties engaged in disputes over the Department's compliance. In October 2006, the district court appointed a mediator to help resolve the parties' differences. When the mediation failed, the Class filed a motion to enforce in January 2007. In August 2007, the motion was denied without prejudice to the right of the Class "to file a properly supported motion for appropriate relief." The district court specified that enforcement of the Decree required invocation of the court's contempt power.

The Class again sought enforcement of the Decree in 2008 by filing a motion for contempt, alleging that the Department was failing to provide (1) eligible families with accurate information about dentists who had openings for Medicaid patients, (2) timely dental care to eligible children, and (3) orthodontic care in all of New Hampshire's counties. The district court denied the motion, finding insufficient "factual support for each element [of contempt] to meet the clear and convincing standard of proof." At the same time, the district court "put [the Department] on notice that it is required to update its provider [l]ist every ninety days" and that "[f]ailure to do so . . . [would] result in a finding of contempt."

In 2010, the Class filed another motion for contempt and a motion to modify or extend the Decree based on alleged noncompliance with the same three requirements set out in the 2008 motion. The district court found that the Class had again failed to prove that the Department was noncompliant. In its analysis, the district court applied the clear and convincing evidentiary standard, but stated that even under the less exacting preponderance standard, the Class had not met its burden of proof. The district court denied both motions.

The Class now appeals the denials of the 2010 motions.[4] We address each in turn.

## II.

## A. Enforcement of the Consent Decree by Filing a Motion for Contempt[5]

The Class argues that the district court erred by requiring the Class to file a motion for contempt to enforce the Decree, with

---

[4] Although the 2008 Order was listed in the Notice of Appeal filed on June 17, 2010, the Class does not argue on appeal the denial of its 2008 motion for contempt, which raised essentially the same issues as the 2010 motion. Accordingly, we do not address it here.

[5] At oral argument we asked the parties to file supplemental briefs discussing whether we could address in this appeal from the denial of the 2010 motion for contempt the district court's ruling, in its denial of the 2007 motion to enforce, that enforcement of the Decree could only be sought by filing a motion for contempt. For present purposes, we assume, without deciding, that the 2007 order was not immediately appealable and that the district court's insistence on the filing of a motion for contempt to enforce the Decree is properly challenged in this appeal.

-6-

its requirement of proof by clear and convincing evidence. As the Class put it, "Due to the district court's insistence on a contempt proceeding, the Children faced an arbitrary and unreasonably high bar in bringing Decree noncompliance issues to the court's attention over the life of the Decree." We find no support in the Decree or the case law for the Class's insistence that it did not have to file a motion for contempt to remedy the Department's alleged noncompliance with the Decree.

Under the terms of the Decree, the party alleging noncompliance is charged with bringing the issue to the court's attention by either (1) a motion for contempt, or (2) a stipulation:

> The Court shall also retain jurisdiction over this action for an additional sixth year to determine whether or not the Defendant was in compliance with the Decree during the previous five years of the Decree and if not, what remedy or remedies are appropriate <u>if requested by the filing of a motion for contempt or by stipulation of the parties</u> prior to the end of the sixth year.

Decree Section I (emphasis added). The Decree repeats these options elsewhere in Section I:

> <u>If no motion for contempt or stipulation is filed</u>, the parties agree that the case shall be dismissed from the Court's docket at the conclusion of the sixth year or any extension of federal Court jurisdiction.

<u>Id.</u> (emphasis added). The remedial measures designated in Section I differ from other mechanisms identified in the Decree. For example, under Section II, modification of the decree may be

"sought by motion or stipulation." This distinction suggests that an ordinary motion is sufficient for modification, whereas a request to enforce the original terms of the Decree must take the form of a motion for contempt.

The Class points to language in the Decree stating that "if the parties cannot agree" whether the Department is in compliance with the Decree, "[t]hen either party may ask the Court to resolve the dispute, including but not limited to ordering the Department to take further actions designed to achieve compliance with this Decree and with federal law." Decree Section XII(B). The Class suggests that this language "demonstrates that the parties intended the trial court to have available as an enforcement tool the entry of remedial orders as needed." We do not read this provision to create a distinct enforcement mechanism. The quoted language follows language requiring the parties to meet outside of court to discuss compliance concerns before engaging the court. Decree Section XII(B). In this context, we read the quoted language to mean that the parties may seek enforcement from the court if negotiations fail. Other provisions in the Decree specify the mechanism by which the parties must seek enforcement from the court. As noted, those provisions make clear that a party seeking enforcement must do so through a motion for contempt. See Decree Section I.

Moreover, it is well settled in the law that a motion for contempt is the proper way to seek enforcement of a consent decree. Brewster v. Dukakis, 675 F.2d 1, 3 (1st Cir. 1982) (stating that enforcement of a consent decree is sought by "an action for enforcement (i.e., contempt)"); see also, e.g., Whitehouse v. LaRoche, 277 F.3d 568, 578 n.6 (1st Cir. 2002); Martel v. Fridovich, 14 F.3d 1, 3 n.4 (1st Cir. 1993); Johnson v. City of Tulsa, 489 F.3d 1089, 1103-04 (10th Cir. 2007); NLRB v. Ironworkers Local 433, 169 F.3d 1217, 1219 (9th Cir. 1999); United States v. O'Rourke, 943 F.2d 180, 189 (2d Cir. 1991); DeGidio v. Pung, 920 F.2d 525, 534 (8th Cir. 1990); Green v. McKaskle, 788 F.2d 1116, 1123 (5th Cir. 1986).[6]  Hence, the district court did not err by insisting that the Class seek enforcement through a motion for contempt.

## B.  Denial of the 2010 Motion for Contempt

We review the denial of a motion for contempt for abuse of discretion.  See Islamic Inv. Co. of the Gulf (Bah.) Ltd. v. Harper

---

[6] The Class asserts that the use of the phrase "motion to enforce" in Frew, 540 U.S. at 435, 439, shows that a mechanism other than invocation of the contempt power is available to enforce consent decrees.  The label given to a motion to enforce a consent decree does not control the legal requirements applicable to such a motion, including the requirement of proof of noncompliance by clear and convincing evidence.  Moreover, in discussing the motion to enforce, the Frew Court relied on a case that states that "noncompliance with a consent decree is enforceable by citation for contempt of court."  Id. at 439 (citing Firefighters v. Cleveland, 478 U.S. 501, 518 (1986)).

(In re Grand Jury Investigation), 545 F.3d 21, 24 (1st Cir. 2008) (citing Langton v. Johnston, 928 F.2d 1206, 1220 (1st Cir. 1991)). To prove civil contempt, a movant must show that (1) the alleged contemnor had notice of the order, (2) "the order was clear and unambiguous," (3) the alleged contemnor "had the ability to comply with the order," and (4) the alleged contemnor violated the order. United States v. Saccoccia, 433 F.3d 19, 27 (1st Cir. 2005) (internal quotation marks omitted). As noted, the movant must make this demonstration with clear and convincing evidence. See, e.g., Islamic Inv. Co. of the Gulf (Bah.) Ltd., 545 F.3d at 25; Saccoccia, 433 F.3d at 27.[7]

The parties do not contest that the first three prongs of the contempt inquiry are satisfied. They contest only whether the Department violated the Decree. The Class alleged three varieties of noncompliance in 2010, asserting that the Department violated its duty to (1) effectively inform Medicaid participants of the

---

[7] Even if the plaintiff is able to prove each of the elements, a court may exercise its discretion and decline to make a finding of contempt where the defendant has been substantially compliant with the terms of the underlying order. AccuSoft Corp. v. Palo, 237 F.3d 31, 47 (1st Cir. 2001); Langton, 928 F.2d at 1220 (citing, inter alia, Howard Johnson Co. v. Khimani, 892 F.2d 1512, 1516 (11th Cir. 1990) ("Conduct that evinces substantial, but not complete, compliance with the court order may be excused if it was made as part of a good faith effort at compliance."); Balla v. Idaho State Bd. of Corrections, 869 F.2d 461, 466 (9th Cir. 1989) ("Substantial compliance with a court order is a defense to an action for civil contempt.")). The district court's denial of the motion for contempt did not rest on findings of substantial compliance.

dental EPSDT program, (2) provide reasonably prompt dental assistance, and (3) provide statewide dental assistance. Taking each in turn, we consider whether the district court committed error by finding that the Class had not proved by clear and convincing evidence that the Department's performance was deficient. We then consider whether the district court abused its discretion by refusing to hold an evidentiary hearing on the contempt motion.

1. Duty to Effectively Inform Medicaid Participants of the EPSDT Program

Under the terms of the Decree, the Department must comply with federal Medicaid law. Federal law requires the Department to inform eligible persons "of the availability of early and periodic screening, diagnostic, and treatment services," 42 U.S.C. § 1396(a)(43)(A), including dental services, 42 U.S.C. § 1396d(r)(3); see also Rosie D., 310 F.3d at 232.

The Decree expands on the Department's obligations by requiring the Department to provide "reasonably current information" to Class members as to whether dental offices are accepting new Medicaid patients. In 2008, the district court interpreted this requirement to mean that the Department must update its provider information list at least every 90 days.[8]

_____

[8] In its order denying the Class's 2008 motion for contempt, the district court expressed concern about the currency of the information available to Class members. The Class presented no

-11-

The Class argues that the Department did not comply with its information obligation between 2004 and 2008 because it failed to inform patients effectively about which dentists had openings. The Class also argues that the Department remains out of compliance because it does not list the number of openings at offices accepting new Medicaid patients.

Civil contempt is a forward-looking penalty meant to coerce compliance rather than to punish past noncompliance. See McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949); United States v. United Mine Workers, 330 U.S. 258, 303-04 (1947); United States v. Puerto Rico, 642 F.3d 103, 108 (1st Cir. 2011). In its 2010 motion for contempt, the Class sought to coerce such compliance. Nevertheless, the Class argues that a provision in the Decree required the court, in considering the contempt motion generally, to review the Department's level of compliance over the entire term of the Decree.[9] Indeed, at oral argument, counsel for the Class

_____

evidence of noncompliance with the 90-day requirement in 2010, and the district court expressed no concern in its 2010 order denying the motion for contempt.

[9] After being amended in 2009, Decree Section I stated that

[t]he Court shall . . . retain jurisdiction over this action for an additional six months to determine whether or not the Defendant was in compliance with the Decree during the previous five years and six months of the Decree and if not, what remedy or remedies are appropriate if requested by the filing of a motion for contempt or by stipulation of the parties prior to the end of the sixth year.

-12-

suggested that the Class's 2010 motion for contempt should have been granted based on the Department's alleged noncompliance between 2004 and 2008. Although evidence of any noncompliance from 2004 to 2008 was certainly relevant to consideration of the Class's motion, the district court could properly focus on the Department's current compliance with the Decree, and whether any measures had to be taken to achieve the level of compliance sought by the Class.[10]

On the particular issue of effectively informing Medicaid participants of the EPSDT program, the district court rejected the Class's allegation of noncompliance for failing to list the number of openings at dental offices accepting new Medicaid patients. The court reasonably concluded that including the number of openings could result in the list becoming outdated well before the Department's next quarterly update, making inclusion of this information unlikely to improve the list's accuracy.

---

[10] In some instances, a finding of civil contempt may be imposed to compensate a party harmed by noncompliance. Puerto Rico, 642 F.3d at 108; see also United Mine Workers, 330 U.S. at 303-04 ("Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained."). The Class did not seek compensation for its members; it sought only to coerce compliance. Thus, the district court properly focused on current compliance. See id. at 304 (noting that while compensation must be based on the actual loss caused by past wrongs, a court seeking to coerce compliance properly looks forward and "consider[s] the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired").

Moreover, there is no language in the Decree requiring the Department to collect information from providers about the number of openings in each office or to include that information in the Department's provider list. The Decree includes a significant level of detail on the information about dental providers that the Department must give Class members. For example, the Department must relay the names and phone numbers of three to six dental providers to all eligible, non-emergency callers and supply a "reasonably current" list of dentists, dental offices, and dental clinics with openings for new Medicaid patients. See Decree Section VII(F)(1). Nowhere does the Decree specify that the number of openings at an office should be included on the provider list. Because the Department is not required to provide the number of openings, its failure to do so did not constitute contempt.

2. Duty to Provide Reasonably Prompt Medical Assistance

Both Section VII(B) of the Decree and federal law require the Department to provide medical assistance to eligible individuals with reasonable promptness. See 42 U.S.C. § 1396a(a)(8). Under the terms of the Decree, the Department is obligated to "arrange for provision of dental screenings using a periodicity schedule of every six months." Decree Section VII(B). In an effort to facilitate provision of EPSDT program services, the Department notifies eligible families of the availability of the program and provides them with information about a variety of program

-14-

components, including, for example, transportation and scheduling assistance services. Decree Section VIII. The Department also contacts Class members to "advise of the importance of preventive oral health care" and, among other things, to "remind the Class [m]embers that it is time to schedule a dental check-up/exam." Decree Section VIII(a)(1), (2). After contacting Class members with this type of information, the Department relies on them to request available services. A request for services, in turn, triggers additional obligations on the part of the Department to provide services with reasonable promptness. For example, when a Class member "contacts the Department's Medicaid Client Services Unit to request a dental screening," the Department must "use its best efforts to ensure that [the Class member] receives a dental screening from a dental provider within ninety (90) days of the initial request for such service." Decree Section VII(B).

The Class argues that the Department's responsibility to provide a six-month screening within ninety days of a Class member's request for one does not define the full scope of the Department's promptness obligations. Instead, the Class argues that the Department has an affirmative duty to ensure that eligible children receive services in a timely and effective manner, regardless of whether services are requested. Stating that it is unfair to place "legal responsibilities on indigent families to 'trigger' their children's rights to any dental services," the

-15-

Class maintains that the Department must "assure that these services are actually provided to children." The Class cites evidence that approximately 40 percent of eligible children are not receiving regular dental screenings.[11] It also cites a survey conducted by the University of New Hampshire Survey Center in early 2008 showing that 14 percent of Medicaid-enrolled survey participants expressed some level of dissatisfaction with the ease of scheduling and the timeliness of receiving dental services.

The Department maintains that reasonable promptness should be measured from the time that services are requested. Siding with the Department, the district court found that

> [b]ased on the plain meaning of Section VII(b), the 'reasonable promptness' requirement for screenings is triggered by a request made by a Class member and does not exist until a request is made. Therefore, statistics about how many children have received dental services, without detail about how many contacted the Department for screenings and the time taken to provide screenings, may provide some evidence of a lack of reasonable promptness but does not provide clear and convincing evidence of noncompliance.

The Class misinterprets the district court's statement that "statistics about how many children have received dental services . . . may provide some evidence of a lack of reasonable promptness"

---

[11] The data are from a "program measure report" provided by the Department pursuant to Section XI(A) of the Decree. The data indicated that of the 58,309 Class members continuously enrolled in Medicaid during State Fiscal Year 2009, 59.7 percent received the preventive services described in Section XI(A)(6)(b)(iii) of the Decree.

to mean that the district court found the Department at least partially noncompliant.  Instead, the district court found that the statistics, though relevant to the compliance issue, were insufficient to prove the Class's claim.  In fact, the district court found that

> [t]he survey results cited by the Class . . . tend to indicate that the Department is providing the services covered by the survey with reasonable promptness.

We agree with the district court that the Decree itself incorporates the request-based timeliness assessment by imposing a 90-day deadline on action to fulfill a request for a dental screening.  See Decree Section VII(B).  Moreover, the vague concept of timeliness proposed by the Class is unworkable.  Beyond notification efforts, we cannot envision how the Department would ensure that eligible individuals submit to services.[12]  The Department cannot compel families to use the program, and timeliness cannot be measured when services are never requested or performed.

We also agree with the district court that the fact that up to 40 percent of eligible children were not receiving services is insufficient to demonstrate by clear and convincing evidence that the Department is failing to provide services with reasonable

---

[12] The Class does not explain how the Department might provide services to eligible children whose families do not request them. It simply insists that it do so.

promptness. The Class did not provide statistical evidence regarding how many eligible children actually requested services. Given the absence of that far more probative evidence, the Class failed to make its case for noncompliance with the reasonable promptness requirement.[13]

Although we share the district court's concern that 14 percent of survey participants expressed dissatisfaction with the ease of scheduling and the timeliness of receiving dental services, we note that this level of dissatisfaction was not unique to Class members. When the length of a patient's relationship with a dental office was taken into account, the survey found that there was no significant difference among the three sampled populations - Medicaid participants, commercially insured or uninsured individuals, and subscribers to the State Children's Health Insurance Program.[14] Under the terms of the Decree, the Department may not be required to provide services in a shorter timeframe than

---

[13] In its 2008 order, the district court found that a large percentage of eligible children were not receiving dental screenings. Although the court put the Department "on notice" that its procedures needed improvement, it held that the statistical evidence regarding receipt of dental services was insufficient, standing alone, to show that the Department was not providing services with reasonable promptness. In 2010, the district court observed that since its 2008 admonition, the Department had demonstrated "improvement in [its] efforts and an increase in the number of Class members receiving services."

[14] The State Children's Health Insurance Program is also known as the New Hampshire Healthy Kids Silver program. It provides low-cost health and dental coverage for uninsured children in families whose income is above the limit for Medicaid.

is available to privately insured parties.  <u>See</u> Decree Section VII ("The timeliness requirements described herein are subject to market conditions and in no event shall the Department be required to provide the assistance or services described in a shorter timeframe than would be available to a privately insured person.").

3.  Duty to Provide Statewide Medical Assistance

In its 2008 motion for contempt, the Class argued that the Department was noncompliant with its obligation to provide orthodontic services to all Class members.  Specifically, the Class took issue with the Department referring Class members who lived in three northern counties, in which there were no participating orthodontists, to orthodontists in other parts of New Hampshire. The Class argued that such referrals resulted in significant travel burdens for some Class members, and that such burdens rendered the Department noncompliant with its obligation to implement a plan that makes medical and dental assistance available statewide. 42 U.S.C. § 1396a(a)(1); 42 C.F.R. § 431.50.  The Department did not dispute that the lack of orthodontists in the three northern counties made those services less readily available to Medicaid patients in that part of the state.[15]  However, because the Class did not present evidence that the Department had the ability to

---

[15] Though not required under a statewide plan, the Department had orthodontists available in each county by the time of the 2010 contempt motion.

provide orthodontic services in those counties, the district court found that the Class did not show by clear and convincing evidence that the Department was noncompliant with is orthodontic services obligations.

In its 2010 motion for contempt, the Class again contended that the Department was noncompliant with the statewide requirement because certain Class members had to travel significant distances to see an orthodontist. Under federal law, states participating in Medicaid must submit for approval a plan that will be effective "in all political subdivisions of the State, and, if administered by them, be mandatory upon them." 42 U.S.C. § 1396(a)(1). Under federal regulations, that plan must "be in effect throughout the State" and "in operation statewide." 42 C.F.R § 431.50(a)-(b)(1). The district court found that neither of these provisions, nor the Decree, requires the Department to provide services within a certain driving distance. We agree. The Department's failure to provide orthodontic services to Class members within a specific geographic distance did not constitute contempt.

4.  The Request for an Evidentiary Hearing

We review the district court's refusal to hold an evidentiary hearing for abuse of discretion. See United States v. Comunidades Unidas Contra la Contaminacion, 204 F.3d 275, 278 (1st Cir. 2000). Although the Class now emphasizes that it was denied an evidentiary hearing, its motion for contempt included only a cursory request

for such a proceeding. In its memorandum of law in support of the contempt motion, the plaintiffs requested an evidentiary hearing because they were "prepared to present additional cumulative factual support for the relief requested" (emphasis added).[16] The Class did not reveal the evidence it was prepared to offer.

Where the moving party fails to indicate that it possesses new material evidence that it wishes to present to the court, an evidentiary hearing is not required. Cf. Gonzalez-Sanchez v. United States, No. 91-1561, 1992 U.S. App. LEXIS 28914, at *11 (1st Cir. 1992)(unpublished) ("No[] . . . evidentiary hearing on petitioner's motion to hold the government in contempt [was] required, for petitioner did not indicate he had any material evidence to present."). To the extent that the Class asks us to hold that the mere request for an evidentiary hearing entitles a party to one, we decline.[17]

---

[16] Plaintiffs made two other succinct requests for an evidentiary hearing. The opening paragraph of the 2010 motion for contempt states: "Plaintiffs seek an evidentiary hearing." At the end of the same motion, within a list of ten requests for relief, the Class asked the court to "[c]onduct an evidentiary hearing." Neither request is accompanied by a proffer or an elaboration on the request.

[17] Because the Class's 2007 motion to enforce, its 2008 motion for contempt, and its 2010 motion for contempt were nearly identical, the Class's 2010 motion for contempt was effectively its third opportunity to present relevant facts and arguments to the district court.

## C.  The 2010 Motion to Modify Or Extend the Consent Decree

In conjunction with its 2010 motion for contempt, the Class moved to modify or, in the alternative, extend the Decree.  In its 2010 order denying the motion, the district court characterized the Class's requests as follows:

> The Class asks the court to modify the Consent Decree by extending its duration, arguing that the Department agreed to comply fully with federal law and has failed to do so.  The Class also asks that the Department be ordered to prepare a remedial plan that would address the Department's violations of federal law and to impose an injunction requiring the Department to comply with its obligations under Medicaid.

The district court refused to impose an injunction or extend the Decree, finding that "the Class did not meet its burden of establishing that the Department [wa]s violating the terms of the Decree or Medicaid laws, a requirement for civil contempt."

### 1.  Modification of the Decree

The Class argues that the district court erred by applying the clear and convincing evidence standard to the motion to modify.  It is far from clear what aspect of the Decree - other than the term of the court's jurisdiction - the Class wished to modify.  As we read the Class's motion, it sought, in essence, to enforce and extend the Decree in light of alleged violations of federal law and the Decree.  Hence, in substance, the motion to modify raised the same compliance issues as the motion for contempt.  Because those issues could only be properly raised in a motion for contempt and

considered under the clear and convincing evidence standard, there were no discrete issues related to modification to consider under the lesser preponderance of the evidence standard urged by the Class. Moreover, in Section I, the Decree outlines the circumstances in which modification is appropriate:

> In the event that the actions taken hereunder are not effective in meeting and maintaining the requirements of federal law . . . it is intended that the issues be addressed promptly or in the annual meeting under ¶ XII(B), and if necessary, that modification of this Consent Decree be properly sought by motion or stipulation.

Under the terms of the Decree, modification is only appropriate if the Department fails to meet or maintain the requirements of federal law. In considering the Class's 2010 motion for contempt, the district court did not find any violations of either federal law or the Decree by the Department. Thus, the district court was justified in denying the motion to modify on the basis of its findings.

2. Extension of the Decree

The Class also sought to extend by three years the court's jurisdiction over the Decree. The Class again argues that the district court erred by holding the Class to a clear and convincing standard of proof on its motion to extend the Decree, when the appropriate standard was a preponderance of the evidence. However, as described above, the district court explicitly stated that the Class failed to meet its burden of proof on the noncompliance

issues even under the standard the Class urges - the preponderance standard. We therefore need not dwell on the appropriate burden of proof applicable to the extension request.

Section I of the Decree permits extension of the court's jurisdiction "for whatever time is directed by the Court upon a showing that substantial compliance with the provisions of the Decree has not been achieved." The district court did not directly address the extension provision of the Decree. Instead, focusing on the distinct modification provision of the Decree, the district court framed the issue as "[t]he Class ask[ing] the court to modify the Consent Decree by extending its duration."

To the extent that the court erred by not applying the extension provision of the Decree, that error was inconsequential. The extension provision requires the Class to show "that substantial compliance with the provisions of the Decree has not been achieved." In pursuing its contempt and modification motions, the Class was unable to show that the Department was noncompliant at all with its obligations under federal law and the Decree. In the absence of such a showing, the district court did not err in denying the motion to extend the Decree.

## III.

For the foregoing reasons, the judgment of the district court is <u>affirmed</u>.

<u>So ordered</u>.